UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

SECURITIES AND EXCHANGE COMMISSION,
                                Plaintiff,

      - against -

NELSON J. OBUS,
PETER F. BLACK,
THOMAS BRADLEY STRICKLAND,

                     Defendants, and

WYNNEFIELD PARTNERS SMALL
        CAP VALUE L.P.,
WYNNEFIELD PARTNERS SMALL
        CAP VALUE L.P. I,
WYNNEFIELD PARTNERS SMALL
        CAP VALUE OFFSHORE FUND, LTD.,

                Relief Defendants.

------------------------------------------------------------- x

06 Civ. 3150 (GBD)

**ECF Case**


# DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTIONS FOR SUMMARY JUDGMENT


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4305

  *Attorneys for Defendant Nelson Obus*

COHEN & GRESSER LLP
100 Park Avenue
New York, NY 10017
Telephone: (212) 957-7600
Facsimile: (212) 957-4514

  *Attorneys for Defendant Peter F. Black*

# TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ............................................................................................................2

I.   This Court Must Grant Summary Judgment on the SEC's Classical Theory of Liability because GE Capital and Strickland Did Not Owe a Fiduciary Duty to SunSource on May 24, 2001 ................................................................................2

   A.   A Lender-Borrower Relationship Such as that Between GE Capital and SunSource Is Not a Fiduciary Relationship. ...........................................4

   B.   As of May 24, 2001, GE Capital Had Not Expressly Agreed to Undertake a Duty of Confidentiality to SunSource. ..................................................7

   C.   This Court's Ruling on Defendants' Motions to Dismiss Does Not Alter the Conclusion that GE Capital and Strickland Did Not Owe a Fiduciary Duty to SunSource. ...................................................................................11

II.  This Court Must Grant Summary Judgment on the SEC's Misappropriation Theory of Liability because Strickland's Communication to Black about SunSource Did Not Breach Any Fiduciary Duty Owed to His Employer.......................12

III. By Repeatedly Changing Its Legal Theory and Muddying the Factual Record, the SEC Has Created a Moving Target.................................................................17

CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ADT Operations, Inc. v. Chase Manhattan Bank, N.A.*,
  662 N.Y.S.2d 190 (N.Y. Sup. Ct. 1997) .............................................................................. 5, 7

*Azurite Corp. Ltd. v. Amster & Co.*,
  844 F. Supp. 929 (S.D.N.Y. 1994) ........................................................................................ 19

*Bausch & Lomb Inc. v. Alcon Laboratories, Inc.*,
  64 F. Supp. 2d 233 (W.D.N.Y. 1999) ................................................................................... 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................................... 20

*Chiarella v. United States*,
  445 U.S. 222 (1980) ................................................................................................................. 3

*Clark v. K-Mart Corp.*,
  979 F.2d 965 (3d Cir. 1992) .................................................................................................... 5

*D'Amico v. City of New York*,
  132 F.3d 145 (2d Cir. 1998) ................................................................................................... 19

*Day Springs Enters. v. LMC Int'l, Inc.*,
  No. 98-CV-0658A(F), 2004 WL 2191568 (W.D.N.Y. Sept. 24, 2004) ................................. 11

*Design Strategies, Inc. v. Davis*,
  367 F. Supp. 2d 630 (S.D.N.Y. 2005) ................................................................................... 16

*Dirks v. SEC*,
  463 U.S. 646 (1983) ..................................................................................................... 4, 6, 13

*Greenberg v. Chrust*,
  198 F. Supp. 2d 578 (S.D.N.Y. 2002) ..................................................................................... 6

*In re Oracle Corp. Derivative Litig.*,
  824 A.2d 917 (Del. Ch. 2003) ............................................................................................... 16

*Morin v. Trupin*,
  809 F. Supp. 1081 (S.D.N.Y. 1993) ......................................................................................... 6

*Moss v. Morgan Stanley Inc.*,
  719 F.2d 5 (2d Cir. 1983) .............................................................................................. 6, 8, 13

**TABLE OF AUTHORITIES** *(continued)*

**Page(s)**

*Musalli Factory for Gold & Jewellry v. JP Morgan Chase*,
No. 1:08-CV-01720 (LAP), 2009 WL 860635 (S.D.N.Y. Mar. 31, 2009)............................ 4, 13

*Nobel Ins. Co. v. City of New York*,
No. 00-CV-1328 (KMK), 2006 WL 2848121 (S.D.N.Y. Sept. 29, 2006) .............................. 11

*Pross v. Katz*,
784 F.2d 455 (2d Cir. 1986) ................................................................................................ 13

*Quinn v. Syracuse Model Neighborhood Corp.*,
613 F.2d 438 (2d Cir. 1980) ................................................................................................ 19

*Radiation Dynamics v. Goldmuntz*,
464 F.2d 876 (2d Cir. 1972) ................................................................................................ 19

*Roswell Capital Partners, LLC v. Alternative Constrs. Techns.*,
638 F. Supp. 2d 360 (S.D.N.Y. 2009) .................................................................................... 4

*Santa Fe Indus. v. Green*,
430 U.S. 462 (1977)............................................................................................................ 13

*SEC v. Goldinger*,
No. 95-56092, 106 F.3d 409, 1997 WL 21221 (9th Cir. Jan. 14, 1997)............................... 19

*SEC v. Gonzalez de Castilla*,
184 F. Supp. 2d 365 (S.D.N.Y. 2002) .................................................................................... 3

*SEC v. Lyon*,
605 F. Supp. 2d 531 (S.D.N.Y. 2009) ................................................................ 7, 8, 10, 18, 19

*SEC v. Switzer*,
590 F. Supp. 756 (W.D. Okla. 1984)..................................................................................... 14

*SEC v. Tome*,
638 F. Supp. 596 (S.D.N.Y. 1986) .......................................................................................... 2

*SEC v. Truong*,
98 F. Supp. 2d 1086 (N.D. Cal. 2000) .................................................................................... 3

*Spencer v. DHI Mortgage Co., Ltd.*,
No. CV F 09-0925 (LJO DLB), 2009 WL 1930161 (E.D. Cal. June 30, 2009).................... 4, 6

*United States v. Chestman*,
947 F.2d 551 (2d Cir. 1991) ........................................................................................... 6, 7, 8

**TABLE OF AUTHORITIES** *(continued)*

<u>**Page(s)**</u>

*United States v. Falcone,*
  257 F.3d 226 (2d Cir. 2001) ................................................................... 7

*United States v. Newman,*
  664 F.2d 12 (2d Cir. 1981) ........................................................... 14, 15

*United States v. O'Hagan,*
  521 U.S. 642 (1997) ..................................................................... 14

*Walton v. Morgan Stanley & Co.,*
  623 F.2d 796 (2d Cir. 1980) ................................................................... 7

*Washington Steel Corp. v. TW Corp.,*
  602 F.2d 594 (3d Cir. 1979) ................................................................... 5

*Weinberger v. Kendrick,*
  698 F.2d 61 (2d Cir. 1982) ................................................................... 4

*Wright v. Ernst & Young LLP,*
  152 F.3d 169 (2d Cir. 1998) ................................................................. 10

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................... 10

Defendants Nelson Obus and Peter F. Black submit this Reply Memorandum of Law in Support of their Motions for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The SEC is unable to prove the first two elements of insider trading: duty and breach. Recognizing that it cannot overcome these fatal deficiencies, the SEC devotes its brief in opposition to Defendants' motions for summary judgment almost entirely to matters not at issue in the motion, presenting evidence to show that a tip was made and that Defendants knew it. The SEC's tap dancing around this infirmity does not change anything. Even accepting as true the SEC's version of the facts regarding the alleged tip, the SEC still fails to offer evidence that GE Capital and Strickland explicitly accepted a duty of confidentiality to SunSource at any point in time prior to the alleged tip, which is required for classical theory liability. The SEC's inability to come forward with evidence of this duty compels a grant of summary judgment for Defendants for the insider trading claims premised on the classical theory. Likewise, the SEC offers no evidence that Strickland's communication with Black about SunSource constituted a breach because there are no facts in the record to demonstrate that Strickland acted with the requisite deceit. Given this lack of evidence of a breach, the SEC's misappropriation theory claims should also be dismissed.

Noticeably lacking in the SEC's brief is a timeline of events to establish duty. The SEC has chosen and alleged May 24, 2001 as the date of the alleged tip. As such, to establish classical theory liability, it must prove that by this date, GE Capital owed a fiduciary duty to SunSource. Instead of offering this Court any sort of chronology of when GE Capital demonstrated its assent to accept such a duty, the SEC points to several general statements about confidentiality attributed to either GE Capital or SunSource, none of which is sufficient to

1

establish that GE Capital accepted a duty of confidentiality and communicated that acceptance to SunSource by May 24, 2001.  Instead, the SEC asks this Court to start from an alleged communication between two friends and work backwards from this conversation to infer every single element of its insider trading claims against Defendants, including duty and breach.  While circumstantial evidence is permissible to prove insider trading, there are limits on its use.  Circumstantial evidence of a tip does not equate to evidence of duty or breach; these are distinct elements of insider trading.  The SEC's impermissible bootstrapping seeks but fails to prove the essential elements of duty and breach, even though the SEC began gathering evidence in this case more than seven years ago.

Defendants' position is simple: the SEC cannot prove duty and breach from the evidence in this case.  The SEC ignores Defendants' very basic arguments about duty and breach and instead loads up its brief with arguments about alleged "post-tip" statements and behavior that would not assist the trier of fact in understanding a specific timeline of facts of when and how duty and breach were established in this case.  As such, this case should not be permitted to move forward to a jury.

## ARGUMENT

### I.   This Court Must Grant Summary Judgment on the SEC's Classical Theory of Liability because GE Capital and Strickland Did Not Owe a Fiduciary Duty to SunSource on May 24, 2001.

Whatever else the evidence might show, in order to establish liability under the classical theory of insider trading, the SEC <u>must</u> establish that GE Capital and (through it) Strickland owed a fiduciary duty to SunSource on May 24, 2001, the date of the alleged tip in this case. *See, e.g., SEC v. Tome*, 638 F. Supp. 596, 617 (S.D.N.Y. 1986) ("Before tipper and tippee liability arises under Section 10(b) and Rule 10b-5, however, there first must be a breach of the insider's fiduciary or similar duty of trust and confidence, satisfying the fraud element.").  This

duty cannot and "does not arise from the mere possession of nonpublic market information."

*Chiarella v. United States*, 445 U.S. 222, 235 (1980).  Rather, it is a specific duty that arises only

from a "fiduciary or other similar relation of trust and confidence," *id.* at 228, the existence of

which the SEC must prove through credible, non-speculative, and legally relevant evidence, *see*

*SEC v. Gonzalez de Castilla*, 184 F. Supp. 2d 365, 376 (S.D.N.Y. 2002) ("[S]ummary judgment

is appropriate in *any* case where the critical evidence is so weak or tenuous on an essential fact

that it could not support a judgment in favor of the nonmovant.") (alteration in original) (citation

and internal quotation marks omitted); *SEC v. Truong*, 98 F. Supp. 2d 1086, 1101 (N.D. Cal.

2000) (granting summary judgment for defendant because the SEC submitted "no specific,

probative evidence, direct or circumstantial" about an essential element of the claim).

The SEC cannot and has not carried that burden here.  Even accepting as true for

purposes of this motion the SEC's version of the facts as laid out in its response, this Court will

be unable to identify any specific and legally relevant evidence from which a reasonable jury

could conclude that *GE Capital owed a fiduciary duty to SunSource on the date of the alleged

tip.*  All of the evidence on both sides makes clear, and it is undisputed as a factual matter, that

leading up to and including May 24, 2001, the relationship between GE Capital and SunSource

was that between a potential lender and a potential borrower, and nothing more.  The law does

not recognize such a relationship as a fiduciary one.  Furthermore, no evidence from either side

suggests that GE Capital dominated or controlled SunSource as of May 24, that it had taken on

the role of representing SunSource's interests as of that time, or, importantly, that it had

explicitly agreed to undertake a duty of confidentiality to SunSource as of that date.  Contrary to

the SEC's claim, moreover, this Court's earlier ruling on Defendants' motions to dismiss did not

and never purported to decide this issue.  Because there exists no evidence to support such a

finding, there can be no legal duty under the classical theory, and summary judgment must be granted against the SEC with respect to that portion of its case.

A.     **A Lender-Borrower Relationship Such as that Between GE Capital and SunSource Is Not a Fiduciary Relationship.**

It is well-established that "[a]n arm's length borrower-lender relationship is not of a confidential or fiduciary nature." *Roswell Capital Partners, LLC v. Alternative Constrs. Techns.*, 638 F. Supp. 2d 360, 368 (S.D.N.Y. 2009) (alteration in original) (citations and internal quotation marks omitted); *see also Spencer v. DHI Mortgage Co., Ltd.*, No. CV F 09-0925 (LJO DLB), 2009 WL 1930161, at *4 (E.D. Cal. June 30, 2009).  As such, it takes much more than mere lending negotiations between a potential borrower and a potential lender to establish a fiduciary duty sufficient to give rise to liability for insider trading.  *See, e.g., Musalli Factory for Gold & Jewelry v. JP Morgan Chase*, No. 1:08-CV-01720 (LAP), 2009 WL 860635, at *13 (S.D.N.Y. Mar. 31, 2009) (upholding "clear principle under New York law that a lender is not the fiduciary of a debtor" in rejecting plaintiff's claim that loan negotiations with defendants established a fiduciary relationship because plaintiff never signed a contract with defendants for investment services and no agency-principal relationship was established that could give rise to a fiduciary relationship).  As the Supreme Court made clear in *Dirks v. SEC*, 463 U.S. 646, 655 n.14 (1983), for an outsider like GE Capital to become a fiduciary of a corporation's shareholders, it must actually be "working for the corporation."[1]

---

[1]  Courts examining the lender-borrower relationship have articulated clear policy reasons why there is no fiduciary relationship between a bank and its borrower's shareholders.  The Second Circuit has stated that transforming a lender-borrower relationship into a fiduciary one "would face serious obstacles, such as arguments that lending relations between banks and large corporations are the product of arm's-length bargaining and that it would be anomalous to require a lender to act as a fiduciary for interests on the opposite side of the negotiating table." *Weinberger v. Kendrick*, 698 F.2d 61, 79 (2d Cir. 1982).  Furthermore, if

[Footnote continued on next page]

The SEC elicited no evidence during discovery that could allow a reasonable jury to infer that by the date of the alleged tip – May 24, 2001 – GE Capital and Strickland were actually working *for* SunSource such that they owed a fiduciary duty to SunSource and its shareholders. The undisputed evidence shows that GE Capital's interaction with SunSource began less than a month before the alleged tip, when a GE Capital business originator cold-called SunSource's CEO, Maurice Andrien, inquiring about any financing needs that SunSource had and whether GE Capital could help with financing.  Defendants' Joint Rule 56.1 Statement ("Defs.' 56.1") ¶ 29; SEC's Response to Defs.' 56.1 ("Pl.'s Resp. 56.1") ¶ 29.  Over the course of the next few weeks, GE Capital prepared a proposal letter to bid on the financing of the STS Sale and sent it to SunSource.  Defs.' 56.1 ¶ 44; Pl.'s Resp. 56.1 ¶ 44.  GE Capital was merely "a bidder, if you will, or a contender for the STS separate financing [the STS Sale]," Defs.' 56.1 ¶ 55; Pl.'s Resp. 56.1 ¶ 55, and SunSource simultaneously shopped around for financing from other banks without giving GE Capital any type of exclusivity for the financing, which never actually materialized.  Defs.' 56.1 ¶¶ 53, 62; Pl.'s Resp. 56.1 ¶¶ 53, 62.  By the date of the alleged tip, May 24, 2001, SunSource had not even executed GE Capital's proposal letter in which GE Capital expressed its interest in providing $40 million worth of financing in support of the STS Sale, nor had it paid

---

[Footnote continued from previous page]

banks were deemed fiduciaries of their borrowers' shareholders, banks would be forever prevented from loaning money to their borrowers' – or, as in this case, their potential borrowers' – competitors.  "As a matter of policy, a *per se* rule [establishing that a bank is a fiduciary of a borrower] might unduly restrict banks in providing credit to competing customers, and might thus unduly reduce the pool of available credit."  *ADT Operations, Inc. v. Chase Manhattan Bank, N.A.*, 662 N.Y.S.2d 190, 195 (N.Y. Sup. Ct. 1997); *see also Washington Steel Corp. v. TW Corp.*, 602 F.2d 594, 601 (3d Cir. 1979), *overruled on other grounds*, *Clark v. K-Mart Corp.*, 979 F.2d 965 (3d Cir. 1992) (noting that if a bank were to owe a fiduciary duty to its borrowers, or even just to potential acquirers of those borrowers, "such a result would tend to burden the free flow of bank financing and the ability which a bank now has to deal with customers who may have interests adverse to other customers") (internal quotation marks omitted).

any money to GE Capital in connection with the sale.  Defs.' 56.1 ¶¶ 44, 56, 61; Pl.'s Resp. 56.1 ¶¶ 44, 56, 61.  There is no dispute as to any of this, and it supports only one reasonable conclusion:  that, as of May 24, 2001, no fiduciary relationship existed between SunSource and GE Capital.

Nor is there any other evidence in the record that would support a finding that, as of May 24, some other sufficiently extraordinary circumstance existed that could have given rise to a fiduciary relationship GE Capital and SunSource.  Courts in this Circuit have held that, absent status as a temporary insider (*i.e., Dirks*' "working for" a corporation), and absent explicit acceptance of a duty of confidentiality, an arms-length commercial relationship may be transformed into a fiduciary one where one party actively represents the interests of or dominates and controls the other.  *See Greenberg v. Chrust*, 198 F. Supp. 2d 578, 585 (S.D.N.Y. 2002); *see also Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 14 (2d Cir. 1983); *United States v. Chestman*, 947 F.2d 551, 568 (2d Cir. 1991).  In its response, the SEC does not even argue that these criteria are satisfied, and it is clear from the undisputed facts that they are not.  As of May 24, GE Capital was negotiating at arms-length a loan whose terms were to have been "[a]ll acceptable to GE Capital," regardless whether those terms were in the interest of SunSource shareholders, a condition which GE Capital would have been obligated to ensure had it been representing SunSource's and not its own interests at that time.  *See* Dunning Decl. Ex. O (GE0005715); *see also Spencer*, 2009 WL 1930161, at *4 ("A commercial lender is entitled to pursue its own economic interests in a loan transaction.").  Likewise, there is no suggestion anywhere in the record that GE Capital *ever* controlled SunSource assets or daily operations or that SunSource had somehow become dependent on or was being influenced by GE Capital, conditions which courts have repeatedly found to be necessary to show dominance and control.  *See, e.g., Morin v.*

*Trupin*, 809 F. Supp. 1081, 1087 (S.D.N.Y. 1993); *ADT Operations, Inc. v. Chase Manhattan Bank, N.A.*, 662 N.Y.S.2d at 193.

> **B.   As of May 24, 2001, GE Capital Had Not Expressly Agreed to Undertake a Duty of Confidentiality to SunSource.**

In this Circuit, it is clear that, where parties are not in a fiduciary relationship, only the explicit acceptance of a duty of confidentiality can transform one party into the other party's fiduciary. *United States v. Falcone*, 257 F.3d 226, 234 (2d Cir. 2001) (citing *Chestman*, 947 F.2d at 567-68); *SEC v. Lyon*, 605 F. Supp. 2d 531, 542 (S.D.N.Y. 2009). A fiduciary duty cannot be created simply by unilaterally entrusting a party with confidential information. *See Chestman*, 947 F.2d at 567; *see also Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 799 (2d Cir. 1980). "Accordingly, courts will not construct a duty of confidentiality simply because confidential information was thrust on a recipient without obtaining an explicit confidentiality agreement," *Lyon*, 605 F. Supp. 2d at 544, for "[r]eposing confidential information in another . . . does not by itself create a fiduciary relationship," *Chestman*, 947 F.2d at 568.

Thus, as the *Lyon* court stated, the "critical question [in insider trading cases involving no pre-existing fiduciary relationship] is whether defendants ever knowingly accepted explicit duties of confidentiality, and if so, *when*." *Lyon*, 605 F. Supp. 2d at 545 (emphasis added). The SEC has presented no evidence whatsoever that, by May 24, 2001 there was a "meeting of the minds" demonstrating GE Capital's specific acceptance of a duty to keep information from SunSource confidential. In fact, the only evidence in the record that is directly on point establishes that SunSource, for whatever reason, never asked GE Capital to enter into a confidentiality agreement with respect to the proposed lending transaction and that, as of May 24, no such agreement had been entered into, even though it was standard practice at GE Capital for the customer to request a confidentiality agreement if there was to be one. Defs.'

56.1 ¶¶ 74-76.  The lack of any confidentiality agreement between GE Capital and SunSource is an undisputed fact in this case, *see* Pl.'s 56.1 ¶ 35, and, as a matter of law, it is highly material. Without any such clear acceptance on GE Capital's part, insufficient evidence exists from which to conclude that GE Capital explicitly undertook a fiduciary duty in its arms-length lending negotiations with SunSource as of May 24, *see Lyon*, 605 F. Supp. 2d at 545; *Moss,* 719 F.2d at 14, and this Court must enter summary judgment in Defendants' favor on the SEC's classical theory of liability.

Recognizing the weakness of its case on this point, the SEC in its response attempts to obscure the issue by citing to various statements by SunSource witnesses concerning their subjective expectations that GE Capital would preserve the confidentiality of any SunSource information it received.  *See* Pl.'s Br. 10, 22-23.  As already explained, however, such generalized expectations are irrelevant to the creation of a fiduciary duty, because it is black-letter law that a unilateral expectation of confidentiality does not establish a fiduciary duty for insider trading purposes.  *See Chestman*, 947 F.2d at 567.  There is, moreover, no evidence anywhere in the record that SunSource actually *communicated* its expectation of confidentiality to GE Capital and, even if it had, everyone agrees that GE Capital never explicitly assumed such a duty.  The SEC's cited excerpts from GE Capital employees' testimony laying out their own understanding that they should not improperly disclose confidential information, *see* Pl.'s Br. 9-10, are likewise irrelevant to the establishment of any fiduciary duty between GE Capital and SunSource.  Those statements relate to those GE Capital employees' understanding of the scope of their duties of confidentiality to *their employer, GE Capital*, and not to any special independent fiduciary duty owed to outside parties.  Notably, none of this evidence of generalized expectations does anything to provide a concrete answer to the *Lyon* court's question

of when and how a duty of confidentiality was allegedly established.  The fact of the matter is

that the SEC is simply unable in its response to put forth a timeline of events that unfolded

during the negotiations between GE Capital and SunSource to establish when it is that the

supposed fiduciary duty arose.

     As a last-ditch attempt to save its case under the classical theory, the SEC leans heavily

on the fact that GE Capital received a copy of a confidential "deal book" that was prepared by

Allied Capital.  *See* Pl.'s Br. 23; Defs.' 56.1 ¶¶ 37-42; Pl.'s Resp. 56.1 ¶¶ 37-42.  The first page

of this deal book contained the heading: "This memorandum is covered by a confidentiality and

non-disclosure agreement between Your Institution and *Allied Capital Corporation*."  Dunning

Decl. Ex. N (GE2002407); Defs.' 56.1 ¶ 41; Pl.'s Resp. 56.1 ¶ 41 (emphasis added).  The SEC

contends that " 'Your [I]nstitution' meant all lenders or potential lenders who received the Deal

Book," and that this deal book somehow created a duty of confidentiality on the part of GE

Capital.  Pl.'s Resp. 56.1 ¶ 41.  Again, assuming for purposes of this motion that the SEC's

version of the facts is true, this fact as a matter of law is insufficient to create a fiduciary duty

sufficient to support the SEC's case of insider trading under the classical theory of liability.  The

reason for this is that, even assuming the truth of the SEC's assertion, the terms of the deal

book's confidentiality heading would establish only that GE Capital owed a duty of

confidentiality to *Allied Capital*, not to SunSource.[2]  In order to prove Defendants' liability

under the classical theory of insider trading pursuant to the allegations in its amended complaint,

---

[2] Defendants, of course, vigorously contest that GE Capital owed a fiduciary duty to Allied Capital.  Defendants also draw the Court's attention to the fact that the SEC is now, for the first time, alleging that GE Capital and Strickland owed a duty to Allied Capital, a claim that it has never pled before in either the original or amended complaints.  Pl.'s Br. 3, 22.

however, the SEC must prove that GE Capital owed and breached a fiduciary duty to *SunSource*,
not Allied Capital.

The SEC has not brought an insider trading claim against Defendants under the theory
that GE Capital and Strickland were temporary insiders of or otherwise misappropriated
information from Allied Capital.  It cannot now, in its brief in opposition to summary judgment
and so late in the proceedings, yet again alter its case and base its claims on any alleged breach
of any such duty.  *See SEC v. Lyon*, 605 F. Supp. 2d at 550.  In *Lyon*, the court rejected the
SEC's attempt to present a new theory of its fraud claim for the first time in its opposition to the
Defendants' motions for summary judgment.  *Id.*  It held that Rule 9(b) of the Federal Rules of
Civil Procedure requires a party alleging fraud to plead with particularity the circumstances
constituting fraud or mistake, and that because the SEC did not plead its new theory of fraud
with particularity in its complaint, the court would not consider it in resolving the motions for
summary judgment.  *Id.*; *cf. Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)
(plaintiff in securities fraud case failed to state a claim of duty to correct a false statement
because alleged duty did not appear in amended complaint and was mentioned for first time in
memoranda in opposition to motion to dismiss).  Here, the SEC has not pled with particularity in
either its original or amended complaint the elements of a theory of insider trading liability based
on an alleged breach of a duty to Allied Capital, and, as such, the SEC should be prohibited from
trying to do so now, more than seven years after it began investigation into the events in this
case.

The evidence in this case as to the existence of a fiduciary duty owed by GE Capital to
SunSource on May 24, 2001, allows for only one conclusion:  GE Capital was not a temporary
insider or in any other special fiduciary relationship with SunSource at that time, and it had not

expressly undertaken any explicit duty of confidentiality vis-à-vis SunSource as of that date.

Accordingly, no fiduciary duty existed, and this Court must grant summary judgment for

Defendants on the SEC's claims under the classical theory, regardless whether it does so on the

SEC's misappropriation claims as well.

### C.   This Court's Ruling on Defendants' Motions to Dismiss Does Not Alter the Conclusion that GE Capital and Strickland Did Not Owe a Fiduciary Duty to SunSource.

This Court's prior statements regarding GE Capital's alleged duty of confidentiality to

SunSource do not alter the conclusion that the evidence fails to establish the duty required for a

finding of liability under the classical theory of insider trading.  Grasping at straws, the SEC

claims that the law of the case somehow prevents Defendants from raising any arguments that

GE Capital did not owe a fiduciary duty to SunSource.  Pl.'s Br. 20-21.  But it is elementary that

the law of the case doctrine does not preclude this Court from reconsidering the same or related

issues on summary judgment that have initially been raised in the context of a motion to dismiss,

such as the element of fiduciary duty.  *See Nobel Ins. Co. v. City of New York*, No. 00-CV-1328

(KMK), 2006 WL 2848121, at *4 (S.D.N.Y. Sept. 29, 2006) ("[A]s a ruling in favor of a plaintiff

on a motion to dismiss does not address the merits of a case, such ruling will not preclude a

subsequent ruling in favor of a defendant on the same issue on a motion for summary judgment

following discovery.") (citation and internal quotation marks omitted).  As this Court well

knows, because the standard to survive a motion to dismiss is far lower than that required to

survive a motion for summary judgment, the denial of a party's motion to dismiss in no way

precludes a later grant of summary judgment in that party's favor if, following discovery, the

evidence is insufficient to establish a necessary element of a claim.  *See Day Springs Enters. v.

LMC Int'l, Inc.*, No. 98-CV-0658A(F), 2004 WL 2191568, at * 13 (W.D.N.Y. Sept. 24, 2004)

("[T]hat a complaint has been found, on a motion to dismiss, to state a claim on its face does not guarantee that resolution of such claim will require a trial.") (citations omitted).

This Court itself recognized as much when it ruled on Defendants' earlier motions to dismiss.  At that time, neither this Court nor Defendants had the benefit of the four years' worth of one-sided pre-complaint discovery that the SEC enjoyed when it drafted its complaint and opposed Defendants' motions to dismiss, let alone the two years of discovery that ensued after the motions to dismiss were denied.  This Court accordingly acknowledged that its denial of Defendants' motions to dismiss would not preclude it from revisiting the ruling at the summary judgment stage:  "I think that *at this stage of the proceeding, that the complaint minimally is sufficient for pleading purposes*, given the set of facts, and I acknowledge that the facts are sparse."  Tr. of Oral Argument, Feb. 15, 2007 (Dunning Decl. Ex. JJ), at 59:24-60:2 (emphasis added).  As Your Honor noted when denying Defendants' motions, "[t]hat does not mean obviously at some stage in this proceeding that it would not be ripe for a consideration of summary judgment if, in fact, the facts do not reasonably support what appears to be the reasonable inference from the facts alleged in this complaint[.]" *Id.* at 64:9-13.

**II.   This Court Must Grant Summary Judgment on the SEC's Misappropriation Theory of Liability because Strickland's Communication to Black about SunSource Did Not Breach Any Fiduciary Duty Owed to His Employer.**

The evidence before this Court also fails to support a finding of liability for insider trading under the SEC's misappropriation theory in this case.  Even assuming that Strickland owed a fiduciary duty to his employer, GE Capital, the SEC has not produced evidence sufficient for a reasonable jury to conclude that he breached this duty.  First, Strickland's conduct lacked the requisite deceitfulness.  Second, Strickland's own employer – the victim of his alleged misappropriation and the party by which the contours of Strickland's fiduciary duties of employment are defined – examined the circumstances of Strickland's communication with

12

Black and did not find that he breached either the terms of his employment contract or any fiduciary duty to GE Capital.

Not every allegedly unfair use of confidential information or act of misconduct involving a securities transaction provides a basis for liability under the federal securities laws.  *See, e.g., Moss*, 719 F.2d at 16 ("[T]he Supreme Court has made clear that section 10(b) and rule 10b-5 protect investors against *fraud*; they do not remedy every instance of undesirable conduct involving securities.") (citations omitted) (emphasis in original);  *Santa Fe Indus. v. Green*, 430 U.S. 462, 479 (1977) ("Absent a clear indication of congressional intent, we are reluctant to federalize the substantial portion of the law of corporations that deals with transactions in securities, particularly where established state policies of corporate regulation would be overridden");  *Pross v. Katz*, 784 F.2d 455, 459 (2d Cir. 1986) (court was "unwilling to extend the reach of the securities laws to every conversion or theft of a security").[3]  In order for misconduct or a breach of duty to rise to the level of a violation under the federal securities laws, there must also be "manipulation or deception."  *Dirks*, 463 U.S. at 654.  Under the misappropriation theory, it is the alleged misappropriator's deception to the source of his

---

[3]  A variety of remedies were potentially available to SunSource and GE Capital if they had concerns regarding the alleged misuse of confidential information received during loan negotiations.  For example, an employee who misuses confidential information obtained through his employment might, depending on the circumstances, be subject to a range of state law claims, including, inter alia, common law fraud, breach of contract, disclosure of trade secrets, and constructive trust.  *See, e.g., Musalli Factory for Gold & Jewellry v. JP Morgan Chase*, No. 1:08-CV-01720 (LAP), 2009 WL 860635 (S.D.N.Y. Mar. 31, 2009) (dismissing actions for common law fraud, conspiracy to defraud, fraudulent concealment, and other state law claims brought against bank and its employees who allegedly knew or should have known that investment advisor had fraudulently diverted a manufacturer's investment funds from a bank investment program account); *Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 64 F. Supp. 2d 233 (W.D.N.Y. 1999) (counter-claims for disclosure of trade secrets, unfair competition, and constructive trust where employee who had signed confidentiality agreement with employer divulged trade secrets to competitor).

information that makes his conduct not only wrongful, but fraudulent.  "Misappropriators…deal in deception.  A fiduciary who '[pretends] loyalty to the principal while secretly converting the principal's information for personal gain'…'dupes' or defrauds the principal." *United States v. O'Hagan*, 521 U.S. 642, 653-54 (1997) (alteration in original) (citations omitted).  Without such deception to the source, there exists no misappropriation liability for insider trading.  *Id.* at 659 n.9 (noting that "the textual requirement of deception precludes § 10b liability when a person trading on the basis of nonpublic information has disclosed his trading plans").

In this case, the requisite deception is lacking.  Although the SEC claims that Strickland knowingly or recklessly tipped Black, the record contains no evidence that Strickland acted with any intent to deceive his employer.  Even assuming that Strickland did convey material nonpublic information to Black – an allegation that Defendants vigorously contest – this would at most show that Strickland was negligent, which is an insufficient basis for finding liability under Rule 10b-5.  *See, e.g., SEC v. Switzer,* 590 F. Supp. 756, 766 (W.D. Okla. 1984) (no liability where alleged tipper's disclosure of material nonpublic information was inadvertent).

Strickland's conduct bears no resemblance to that of the defendants in garden variety misappropriation cases.  For example, *United States v. Newman*, 664 F.2d 12 (2d Cir. 1981), one of the cases cited by the SEC, involved an illicit scheme whereby two investment bankers misappropriated confidential information regarding merger and takeover targets from their employers and surreptitiously conveyed the information to a securities trader at a brokerage firm, who then passed the information to two confederates living abroad.  *Id.* at 15.  The trader and his confederates subsequently purchased stock in the companies that were merger and takeover clients (using secret foreign bank accounts and spreading their purchases among brokers to avoid detection), profited from the trades, and shared their profits with the tippers who had conveyed

the misappropriated information.  *Id.*  Given the obvious deceptiveness of the defendants in that case, it is hardly surprising that the Court found that they had defrauded their employers "as surely as if they took their money." *Id.* at 17.

By contrast, Strickland's own employer concluded after a thorough investigation that he had simply "*made a mistake* by calling [Black] and inquiring about the borrower that we were looking to provide the financing for, and that he did not do it with any sort of malice or intent." Brasser Tr. 131:10-14 (Dunning Decl. Ex. I) (emphasis added).  Consistent with Black and Strickland's own testimony, GE Capital found that Strickland "made a *genuine error*.  He was actually trying to do some underwriting." *Id.* at 125:7-9 (emphasis added).  While the Letter of Reprimand that was placed in Strickland's file stated that it was "inappropriate" and "showed a lack of judgment" for Strickland to communicate with a third party regarding SunSource without first consulting with counsel or a manager, GE Capital did *not* conclude that Strickland violated his fiduciary duty or the terms of his employment contract.  *See* Letter of Reprimand (Dunning Decl. Ex. W).  No court has ever held that liability for misappropriation extends to genuine errors or mistakes, and this Court should not be the first to do so.

The fact that Strickland's own employer did not find that he breached the terms of his employment contract or any fiduciary duty owed to GE Capital by communicating with Black is undeniably significant.  Under the misappropriation theory of liability, the defendant perpetrates fraud not against the shareholders of the company in which stock is traded, but against the source of the inside information.  In other words, the entity that might have been "defrauded" or "duped" by Strickland's alleged misappropriation of information would have been Strickland's employer, GE Capital.  That GE Capital decided not to terminate Strickland's employment is further, uncontroverted evidence that no breach occurred, as a true misappropriator would be

15

expected to face dismissal or other severe sanctions.  *See, e.g., In re Oracle Corp. Derivative Litig.*, 824 A.2d 917, 941 (Del. Ch. 2003) (noting that it is "reasonable to think that [a special litigation committee's] determination that the Trading Defendants had likely engaged in insider trading would have been accompanied by a recommendation that they step down as fiduciaries until their ultimate culpability was decided").  Where, as here, the "wronged" party did not consider the defendant's conduct to constitute a breach of fiduciary duty, it would be nonsensical to nevertheless find the defendant liable.  This is especially true given that the SEC itself has asserted that Strickland's duty flows from his employment relationship with GE Capital.  Pl.'s Br. 24.  *See also Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 638 (S.D.N.Y. 2005) ("[a]bsent the [employment] relationship between the parties, there would be no duty to be breached, no wrong, and, thus, no cause of action") (alterations in original) (citation omitted).  If the scope of Strickland's fiduciary duty is based on his employment relationship and his employer's understanding of the contours of his obligations, it naturally follows that this employment relationship and understanding would also govern the existence of any breach of that duty – and that the employer's finding of no breach would be dispositive.

Because the SEC has failed to demonstrate that Strickland breached his fiduciary duty to his employer, this Court need not consider whether Black and Obus knew or should have known about the alleged breach, and the Court, without more, should grant summary judgment in Defendants' favor on the SEC's misappropriation claims.[4]

---

[4]  Even if Black and Obus *thought* the information conveyed by Strickland had been misappropriated from GE Capital in breach of Strickland's fiduciary duty, this would be insufficient to establish insider trading liability because Black and Obus would be operating under a mistake of fact.  At most, this set of facts might support an allegation of *attempted* insider trading, which is not actionable by the SEC.

**III.    By Repeatedly Changing Its Legal Theory and Muddying the Factual Record, the SEC Has Created a Moving Target.**

The SEC has changed its theory of liability at every stage of this litigation because it knows that there is a fatal deficiency in its case – the inability to establish the existence of a duty. The constantly shifting sands of this case have put Defendants in the unfair position of having to defend against a moving target.  Defendants are entitled to know not just the causes of action against which they are defending, but the basis for these claims – in particular, the legal theories under which the SEC is proceeding and the evidence upon which the SEC relies.

In the initial Complaint, the SEC based its theory of liability on the fiduciary duty that Strickland allegedly owed to SunSource shareholders by virtue of his employment with GE Capital and its relationship to SunSource.  *See* Compl. ¶ 34 [Dkt. #1].  When Defendants moved to dismiss the complaint, the SEC belatedly attempted to rectify its deficient pleadings by inserting additional facts relating to GE Capital's alleged temporary insider status into its opposition brief.  *See* Pl.'s Opp'n to Mot. to Dismiss [Dkt. #19].  At that point, the SEC – no doubt aware that there was insufficient evidence to establish a duty under the classical theory – stated that it was reserving the right to also proceed under the misappropriation theory.  *Id.* at 4 n.2.  It then filed an Amended Complaint, alleging that Strickland not only breached a duty owed to the shareholders of SunSource, but a duty owed to his employer as well.  *See* Am. Compl. ¶¶ 29, 45 [Dkt. #42].

Now, eight years after the alleged tip took place, the SEC is once again changing its legal theory, hoping that it can establish a duty owed to *someone*.  In its opposition brief, the SEC for the first time alleges that Strickland not only owed (and breached) a fiduciary duty to GE Capital and SunSource, but to Allied as well.  Pl.'s Br. 22-23.  Aside from being meritless (see Part I.B, *supra*), this theory was not pled in the SEC's Amended Complaint and may not be considered by

17

this Court.  *See SEC v. Lyon*, 605 F. Supp. 2d at 550 (in resolving summary judgment motion,

court refused to consider SEC's new theory of fraud, which was raised for the first time in SEC's

summary judgment opposition brief).

In addition to this game of bait-and-switch, the SEC attempts to deflect attention from the

weaknesses in its arguments by latching onto facts that have no bearing on and are irrelevant to

the key issue raised in Defendants' summary judgment motions, *i.e.*, the lack of a duty.[5]  Instead,

the SEC constantly reverts to facts that relate to other elements of its claims.  Reliance on such

evidence – much of which the SEC mischaracterizes – serves no purpose other than to muddle

the factual record and attempt to distract this Court.[6]

Moreover, much of the "circumstantial evidence" offered by the SEC is mere conjecture.

For example, the SEC cites Strickland's and Black's differing recollections of a conversation as

its sole source of evidence that "there could have been more than one instance in which

---

[5]  Not only does the SEC latch on to facts that have no significance to Defendants' arguments
about lack of duty, it also misapprehends Defendants' arguments regarding the lack of the
deception evidenced in Obus's phone call to Andrien following Strickland's communication
to Black about SunSource.  Defendants' argument is not, as the SEC characterizes it, that
Obus's call to Andrien constituted the requisite disclosure to the market.  *See* Pl.'s Br. at 29
n.12.  Rather, the point is simply that even considering the evidence of this phone call in the
light most favorable to the SEC, no reasonable jury could infer that Obus acted with deceit,
given that he revealed to Andrien – the CEO of the very company about which he allegedly
had inside information – that he possessed the information at issue.  Such behavior forecloses
an inference that Obus concealed his knowledge of any nonpublic information about
SunSource.

[6]  For example, the SEC refers to Wynnefield's trading history, which goes to scienter rather
than duty.  Although the SEC asserts that Wynnefield had "no apparent regular buying
pattern or practice with respect to SunSource," Pl.'s Br. 14,  the record conclusively shows
that Wynnefield was already a large shareholder in SunSource, having made eleven separate
stock purchases in the six months leading up to the June 8, 2001 transaction.  Kisslinger
Decl. Ex. 4.  Moreover, the amount of shares Wynnefield purchased on June 8, 2001 was not
aberrational for it, as it had purchased a comparable block in October 2000.  *Id.*

Strickland tipped Black, or updated him on the status, about the SunSource deal."  Pl.'s Br. 11.

Inferences such as these go beyond the "range of reasonable probability."  *Radiation Dynamics,*

*Inc. v. Goldmuntz*, 464 F.2d 876, 887 (2d Cir. 1972); *see also SEC v. Goldinger*, No. 95-56092,

106 F.3d 409, 1997 WL 21221 at *3 (9th Cir. Jan. 14, 1997) ("[T]he SEC cannot merely provide

circumstantial evidence to show the *possibility* of illegal trading.") (emphasis in original).  While

the court may consider circumstantial evidence and is required to draw "all reasonable

inferences" in favor of the nonmoving party, it is not required to, and indeed may not, "credit

unsupported factual allegations and innuendos."  *See Azurite Corp. Ltd. v. Amster & Co.*, 844 F.

Supp. 929, 936 (S.D.N.Y. 1994) (citing *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d

438, 445 (2d Cir. 1980) (conclusory allegations or denials unsupported by some affirmative

indication of the veracity of assertions will not defeat summary judgment motion).   At this stage

of the litigation, with discovery having been completed, "'some hard evidence' in support of [the

nonmoving party's] factual assertions" is required.  *See SEC v. Lyon*, 605 F. Supp. at 540 (citing

*D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)).  Instead, the SEC has spun a

tale of "furtive" meetings and "peculiar" calls in an effort to obscure the fact that it cannot

establish a basic and threshold element of its claim:  the existence of a duty.

## CONCLUSION

Despite having eight years to prove its case, the SEC has failed to meet its burden.  In particular, the SEC is unable to establish the threshold requirement that GE Capital (and, through it, Defendants) owed a fiduciary duty to SunSource as of May 24, 2001, the date of the alleged tip in this case.  Absent the requisite duty, Defendants cannot be held liable for insider trading under the classical theory of liability, and summary judgment must be granted in their favor with respect to that theory.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates entry of summary judgment, after adequate time for discovery…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case").  Likewise, because the evidence does not support a finding that Strickland committed the requisite breach of his duties to GE Capital under the misappropriation theory, summary judgment in favor of Defendants must be granted on that theory as well.

For all of the foregoing reasons, Defendants Nelson Obus and Peter F. Black respectfully request that this Court grant Defendants' motions for summary judgment.

Dated:  New York, New York
      October 30, 2009

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ Joel M. Cohen
     Joel M. Cohen (JC 9162)
     Richard A. Bierschbach (RB 7861)
     Mary Kay Dunning (MD 9803)
     Siham Nurhussein (SN 9379)
       200 Park Avenue
       New York, NY 10166
       (212) 351-4000
     *Attorneys for Defendant Nelson Obus*

COHEN & GRESSER LLP

By: /s/ Mark S. Cohen
     Mark S. Cohen (MC 9055)
     Sandra C. McCallion (SM 0833)
     Oliver S. Haker (OH 6343)
       100 Park Avenue
       New York, NY 10017
       (212) 957-7600
     *Attorneys for Defendant Peter F. Black*