UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
SECURITIES AND EXCHANGE COMMISSION, :
                                        :
                    Plaintiff, :     06 Civ. 3150 (GBD)
                                        :
                                        :     **ECF Case**
                 v. :
                                        :
NELSON OBUS, et al., :
                                        :
                   Defendants. :
------------------------------------------------------------- x

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

Joel M. Cohen
Mary Kay Dunning
Darcy C. Harris
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4305

Mark S. Cohen
Jonathan S. Abernethy
Reginald B. Schafer
COHEN & GRESSER LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 957-7600
Facsimile: (212) 957 4514

*Attorneys for Defendant Nelson Obus and Relief
Defendants Wynnefield Partners Small Cap
Value L.P., Wynnefield Partners Small Cap
Value L.P. I, and Wynnefield Partners Small Cap
Value Offshore Fund, Ltd.*

*Attorneys for Defendant Peter Black*

Roland G. Riopelle
Robert Caliendo
SERCARZ & RIOPELLE
152 W. 57th Street
New York, New York 10019
Telephone: (212) 586-4900

*Attorneys for Defendant Thomas Bradley Strickland*

Dated: March 26, 2014

Defendants Thomas Bradley Strickland, Peter Black, and Nelson Obus respectfully submit the below proposed jury instructions, as revised from the jury instructions proposed by the SEC.  Defendants' revisions to the instructions submitted by the SEC are noted in bold.

[To be read after the jury is empanelled but before opening statements.]

## PROPOSED OPENING REMARKS OF THE COURT

Before we begin the trial, I will explain a little bit about the case and describe how the trial will be conducted.  At the end of the trial, I will give you more detailed guidance on how you will go about reaching your decision.

In a court of law, the party who brings a lawsuit is called the plaintiff.  The plaintiff in this case is the United States Securities and Exchange Commission, sometimes referred to as the SEC or the Commission.  The party against whom a lawsuit is **[*Insert*: is]** brought is called the defendant.  In this case, the defendants are **[*Insert*: T.]** Bradley Strickland, Peter Black, and Nelson Obus.

***Replace paragraphs 3 through 9 of SEC proposal with*:**

**The SEC alleges that Brad Strickland engaged in insider trading by disclosing to Peter Black on May 24, 2001 that a company called Allied Capital Corporation was planning to acquire a company called SunSource.  The SEC alleges that the information that Allied was planning to acquire SunSource was material and non-public, and that in disclosing the information to Black, Strickland violated a duty of trust and confidentiality to Strickland's employer, GE Capital, to keep the information confidential.  The SEC alleges that Black then disclosed that Allied was planning to acquire SunSource to his boss, Nelson Obus, who later allegedly traded in SunSource stock on the basis of that information.**

**The defendants deny the SEC's allegations.  They deny that Strickland discussed that Allied was planning to acquire SunSource with Black on May 24, 2001.  They further deny that Black knew of or disclosed the forthcoming Allied acquisition of SunSource to Obus.  The defendants also deny that Obus knew that Allied was planning to acquire SunSource, or that Obus's trades in SunSource stock were in any way based on the forthcoming Allied acquisition of SunSource.**

By your verdict, you will decide disputed issues of fact.  I will decide all questions of law that arise during the trial, and before you retire to deliberate at the close of the case, I will instruct you on the law that you must follow and apply in deciding upon your verdict.

Since you will be called upon to decide the facts of this case, you should give careful attention to the testimony and evidence presented for your consideration, bearing in mind that I will instruct you at the end of the trial concerning the manner in which you should determine the credibility or "believability" of each witness and the weight to be given to the testimony.  During the trial, however, you should keep an open mind and should not form or express any opinion about the case one way or the other until you have heard all of the testimony and evidence, the closing arguments of the lawyers, and my instructions to you on the applicable law.

During the course of the trial it may be necessary for me to confer with the lawyers out of your hearing concerning questions of law or procedure that require consideration by the court alone.  On some occasions, you may be excused from the courtroom for that same reason.  I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

**Evidence**

The evidence from which you will find the facts will consist of the testimony of witnesses, documents, and other things received into the record as exhibits and any facts the lawyers agree or stipulate to, or that the court may instruct you to find.  Some of the testimony will be given by witnesses who will be present in the courtroom.  In addition to live testimony and the exhibits, deposition testimony may be presented to you.  A deposition is sworn testimony given by a witness outside of court in the presence of a person authorized to administer an oath and in the presence of attorneys for each party, who may ask questions.  [***Delete***:  **The testimony given in depositions is evidence, and you may consider it in just as though it had been given from the witness stand.  *Replace with*:  You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.**[1]]

Certain things are not evidence and must not be considered by you.  I will list them for you now:

1.    Statements, arguments, and questions by lawyers are not evidence.

2.    Objections to questions are not evidence.  Lawyers have an obligation to their clients to make an objection when they believe the evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.  If the objection is sustained, ignore the question − that is do not draw any inferences from the question itself.  If it is overruled, treat the answer like any other.  If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3.    Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4.    Anything you have seen or heard outside the courtroom is not evidence and must be disregarded.  You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence:  direct and circumstantial.  Testimony of a witness showing first-hand observation of a fact by that witness is direct evidence.  For example, the testimony of an eyewitness about what he or she saw is direct evidence.  Circumstantial evidence is proof of some facts-including events and circumstances–on the basis of which you may infer

---

[1] 4 L. Sand *et al*., Modern Federal Jury Instructions (Civil), Instr. 74-14 (2013).

the existence or nonexistence of an additional fact or facts. Let me give you an example of both types of evidence. Picture a person standing on a sidewalk observing rain falling. That person's later testimony, "I saw it raining," is direct evidence that it was raining at that time. In contrast, picture a second person inside the lobby of a windowless building. This second person later testifies, "I was in the lobby of a building, and I saw people coming in with wet coats and umbrellas." This testimony is circumstantial evidence that it was raining outside at that time; it supports an inference that it was raining outside. You may consider both kinds of evidence.

It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject.

*Delete*: Burden of Proof paragraphs.

*Insert*:

**Law to Be Applied**

**At the end of the trial, I will instruct you as to the law. It is your duty to accept my instructions as I give them to you and to apply them to the facts as you determine them, just as it will be my duty to preside over the trial and to decide what testimony and what evidence is proper under the law for you to consider. On these legal matters, you must take the law as I give it to you. During the course of the trial you may hear testimony or see documents regarding insider trading or what is or is not permissible under the law. This is factual evidence only, and does not convey the law that must be applied to this case. If any attorney, witness, or document that is admitted into evidence states a legal principle that is different from any that I give, it is my instructions that you must follow.[2]**

**Conduct of the Jury**

Now, a few words about your conduct as jurors. To ensure fairness, you as jurors must obey the following rules:

First, do not talk among yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide on your verdict;

Second, do not talk with anyone else about this case, or about anyone who has anything to do with it, until the trial has ended and you have been discharged as jurors. "Anyone else" includes members of your family and your friends. You may tell them that you are a juror, but do not tell them anything about the case until after you have been discharged by me;

Third, do not let anyone talk to you about the case or about anyone who has anything to do with it. If someone should try to talk to you, please report it to me immediately;

Fourth, during the trial you should not speak with any of the parties, lawyers or witnesses involved in this case. You should not even pass the time of day with any of them. It is important

---

[2] 4 L. Sand *et al.*, Modern Federal Jury Instructions (Civil), Instr. 71-2 (2013); *United States v. Newman*, 1:12-cr-00121 (RJS), Tr. Jury Charge at 4006:14-24 (S.D.N.Y. Dec. 12, 2012).

not only that you reach a just result in this case, but that you also give the appearance of doing justice.  If a person from one side of the lawsuit sees you talking to a person from the other side, even if it is simply to pass the time of day, an unwarranted and unnecessary suspicion about your fairness might be aroused.  If any lawyer, party or witness does not speak to you when you pass in the hall, ride the elevator or the like, do not take offense.  They are not supposed to talk or visit with you;

Fifth, do not read any news stories or articles about the case or about anyone involved with it, and do not **[*Delete*: or]** listen to any radio or television reports about the case or about anyone involved with it;

Sixth, do not do any research, such as consulting the Internet, dictionaries or other reference materials, and do not make any investigation about the case on your own;

Seventh, if you need to communicate with me, simply give a signed note to the Court Security Officer to give to me; and

Eighth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep an open mind until then.

I am going to permit you to take notes in this case, and the courtroom deputy has distributed pencils and pads for your use.  I want to give you a couple of warnings about taking notes, however.  First of all, do not allow your note-taking to distract you from listening carefully to the testimony that is being presented.  If you would prefer not to take notes at all but simply to listen, please feel free to do so.  Please remember also from some of your school experiences that not everything you write down is necessarily what was said.  Thus, when you return to the jury room to discuss the case, do not assume simply because something appears in somebody's notes that it necessarily took place in court.  Instead, it is your collective memory that must control as you deliberate upon the verdict.  Please take your notes to the jury room at every recess.  I will have the courtroom deputy collect them at the end of each day.  They will then be returned to you the next morning.  When the case is over, your notes will be destroyed.  These steps are in line with my earlier instructions to you that it is important that you not discuss the case with anyone or permit anyone to discuss it with you.

If you have problems hearing a witness, or your view of a witness is obscured unintentionally by one of the lawyers, raise your hand.  If you need anything such as water, if you are tired and want a rest, or if for any other reason you need a break, raise your hand.

**Course of the Trial**

The trial will now begin.  First, each party may make an opening statement.  An opening statement is neither evidence nor argument; it is an outline of what that party intends to prove, and is offered to help you follow the evidence.  Counsel for the plaintiff will make an opening statement and then the counsel for defendants will make an opening statement.

Next, the plaintiff will present witnesses and then counsel for the defendants may cross-examine them.  The counsel for the defendant will then present their witnesses, and counsel for the plaintiff may cross-examine them.

When all of the evidence is completed, the lawyers will make their closing arguments to summarize and interpret the evidence for you.  I will instruct you on the substantive law involved in this case, provide you with instructions in connection with your deliberations, and you will then retire to deliberate on your verdict.

[To be read after the close of evidence]

## INSTRUCTION NO. 1:  FUNCTION OF THE JUDGE

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you.  If an attorney has stated a legal principle different from any that I state to you in my instructions, it is my instruction that you must follow.  ***Insert*: Similarly, if a witness or document admitted into evidence stated a legal principle or understanding of the law different from any that I state to you in my instructions, it is my instruction that you must follow.**

You should not single out any instruction as alone stating the law; **[*Replace*: but *with* rather,]** you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or ought to be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

## INSTRUCTION NO. 2:  FUNCTION OF THE JURY

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of witnesses.  You resolve conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw **[*Change*: form to from]** the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors.  In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence.  Nor is what I may have said—or what I may say in these instructions—evidence.  **[*Delete*: In this connection,] [Y]**ou should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence.  But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the SEC has proven its case.

I also ask you to draw no inference **[*Remove*: draw] [*Change*: form to from]** the fact that **[*Insert*: on]** occasion I asked questions of certain witnesses.  These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses.  You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges.  You are to perform the duty of finding the facts without bias or prejudice to any party.

## INSTRUCTION NO. 3:  SYMPATHY

Under your oath as jurors you are not to be swayed by sympathy.  You should be guided solely by the evidence presented during the trial, without regard to the consequences of your decision.

You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence.  If you let sympathy interfere with your clear thinking there is a risk that you will not arrive at a just verdict.  All parties to a civil lawsuit are entitled to a fair trial.  You must make a fair and impartial decision so that you will arrive at the just verdict.

## <u>INSTRUCTION NO. 4:  EVIDENCE IN THE CASE</u>

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have **[*Replace*: produced *with*: introduced]** them, and all facts and events that may have been admitted or stipulated to [and all facts and events that may have been judicially noticed].

Statements and arguments by the lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence.  However, when the lawyers on both sides stipulate or agree on the existence of a fact, unless otherwise instructed, you must accept the stipulation and regard that fact as proved.

[I may take judicial notice of certain facts or events.  When I declare that I will take judicial notice of some fact or event, unless otherwise instructed you must accept my declaration as evidence and regard as proved the fact or the event that has been judicially noticed.]

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.  ***Insert:* Also, if certain testimony was received for a limited purpose − such as for the purpose of assessing a witness' credibility − you must follow the limiting instructions I have given.[3]**

---

[3] 4 L. Sand *et al*., Modern Federal Jury Instructions (Civil), Instr. 74-1 (2013).

## <u>INSTRUCTION NO. 5:  STIPULATIONS OF FACT</u>
**[IF APPLICABLE]**

**[Remove This Instruction]**

## INSTRUCTION NO. 6:  SUMMARIES AND CHARTS ADMITTED AS EVIDENCE

The parties have presented exhibits in the form of charts and summaries.  I decided to admit these charts and summaries into evidence in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience.  You should consider these charts and summaries as you would any other evidence.

## <u>INSTRUCTION NO. 7:  DEPOSITION TESTIMONY</u>
**[IF APPLICABLE]**

**[Replace the SEC's Proposed Instruction With
The Instruction Below]**

\*        \*        \*

Some of the testimony before you is in the form of depositions which have been received in evidence.  A deposition is simply a procedure where prior to trial the attorneys for one side may question a witness or an adverse party under oath before a court stenographer.  This is part of pretrial discovery, and each side is entitled to take depositions.  You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

**SOURCE:** 4 L. Sand *et al.*, Modern Federal Jury Instructions (Civil), Instr. 74-14 (2013).

## INSTRUCTION NO. 8:  INFERENCES DEFINED

You are to consider only the evidence in the case.  However, you are not limited to the statements of the witnesses.  You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience.

*Delete:*  **"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.**

*Replace with***:**

**An inference is not a suspicion or guess.  It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.**

**There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another.  It is for you, and you alone, to decide what inferences you will draw.**

**The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion which you, the jury, are permitted to draw – but not required to draw – from the facts which have been established by either direct or circumstantial evidence.  In drawing inferences, you should exercise your common sense.**

**SOURCE:** Adapted from 4 L. Sand *et al.*, Modern Federal Jury Instructions (Civil), Instr. 75-01 (2013).

## <u>INSTRUCTION NO. 9:  CREDIBILITY OF WITNESSES</u>

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters.  Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you **[*Delete*: may]** think it deserves.  In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

14

## INSTRUCTION NO. 10:  IMPEACHMENT BY PRIOR INCONSISTENT STATEMENTS

**[Replace The SEC's Proposed Instruction
With The Instruction Below]**

\*         \*         \*

You have heard evidence that at some earlier time the witness has said or done something which counsel argues is inconsistent with the witness's trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability.  Evidence of a prior inconsistent statement was placed before you for the limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself.  If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

**SOURCE:** 4 L. Sand *et al*., Modern Federal Jury Instructions (Civil), Instr. 76-5 (2013).

15

## <u>INSTRUCTION NO. 11:  CIRCUMSTANTIAL EVIDENCE</u>

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence.  Direct evidence is when a witness testifies about something he knows by virtue of his own senses—something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit when the fact to be proved is its existence or condition.

The other type of evidence is circumstantial evidence.  This is evidence which tends to prove a disputed fact by proof of other facts.

[<u>Delete example if used in preliminary instruction</u>:  There is a simple example of circumstantial evidence that is often used in court.  Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella that was dripping wet.  Then a few minutes later another person also entered with a wet umbrella.  Now, you cannot look outside the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.  That is all there is to circumstantial evidence.

***Replace with*: You will recall the example I gave in my preliminary instructions to you regarding a person who was in a windowless room and saw people walking in with wet coats and umbrellas; that is circumstantial evidence that it was raining outside**.  That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that your verdict must be based on a preponderance of all the evidence presented.

***Delete*: The law is that the SEC <u>can</u> establish a violation of securities laws based on circumstantial evidence.**

## **INSTRUCTION NO. 12:  STANDARD OF PROOF**

**[Replace The SEC's Proposed Instruction
With The Instruction Below]**

\*        \*        \*

    This is a civil case and as such the plaintiff − the SEC − has the burden of proving every disputed element of its claim to you by a preponderance of the evidence.  If you conclude that the SEC has failed establish any element by a preponderance of the evidence, you must decide against the SEC on the element you are considering.

    What does a "preponderance of evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether the SEC has proven an element by a preponderance of the evidence, you may, unless otherwise instructed, consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have introduced them.

    If you find that the credible evidence on a given element is evenly divided between the parties − that it is equally probable that the SEC is right as it is that the defendants are right − then you must decide that element against the SEC and in favor of the defendants.  That is because the SEC has the burden of proof and must prove more than simple equality of evidence − the SEC must prove the element at issue by a preponderance of the evidence.  To put it differently, if you were to put all of the evidence in favor of the SEC and all of the evidence in favor of the defendants on opposite sides of a scale, the SEC would have to present enough evidence to make the scale tip to its side.

    **SOURCE:** Adapted from 4 L. Sand *et al*., Modern Federal Jury Instructions (Civil), Instr. 73-2 (2013).

## INSTRUCTION NO. 13:  GOVERNMENT AS A PARTY

As you know, the plaintiff in this case is the SEC, an agency of the United States government.  The fact that a governmental entity or agency is involved as a party must not affect your decision in any way.  A governmental agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice.  Your decision must be based only on the evidence presented here.  You must not be influenced in any way by either sympathy or prejudice against anyone.

**_Insert_: In this case you have heard the SEC's views as to how the securities laws apply to certain aspects of this case.  You must not assume that the SEC's views of the securities laws are what govern this case.  On all legal matters in the case, you must follow my instructions on the law alone.**

## **INSERT ADDITIONAL INSTRUCTION:**

## **INSTRUCTION NO 14: MULTIPLE CLAIMS, MULTIPLE DEFENDANTS**

Each defendant is entitled to your separate consideration.  The question of whether liability has been proven is personal to each defendant and must be decided by you as to each defendant individually.

You may have noticed throughout the trial that counsel for various defendants have consulted with each other and have divided the work of the trial in an effort to facilitate their presentation and to avoid duplication.  This does not mean that the defendants' cases are to be viewed together.  The issue of each defendant's liability is personal and must be decided by you as to each defendant individually.

**SOURCE:** Adapted from 4 L. Sand *et al*., Modern Federal Jury Instructions (Civil), Instr. 71-8 (2013); *United States v. Newman*, 1:12-cr-00121 (RJS), Tr. Jury Charge at 4018:11-25 (S.D.N.Y. Dec. 12, 2012).

## INSTRUCTION NO. 15-A: OVERVIEW OF VIOLATIONS CHARGED[4]

### [Replace The SEC's Proposed Instruction Nos. 14-17
### With The Instruction Below]

\*       \*       \*

Those are my general instructions.  Now I am going to turn to the claim in this case.

The SEC alleges that defendants Strickland, Black, and Obus violated Section 10(b) of the Securities Exchange Act of 1934 and a related federal regulation known as Rule 10b-5.

Section 10(b) provides in pertinent part:  "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any National Securities Exchange . . . to use or employ, in connection with the purchase or sale of any security registered on a National Securities Exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Securities and Exchange Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10b-5 reads as follows:  "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails or of any facility of any National Securities Exchange to employ any device, scheme, or artifice to defraud . . . or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

The specific device, scheme, or artifice to defraud or act, practice, or course of business that the SEC charges the defendants with is insider trading.

---

[4]     The Supreme Court has expressly reserved judgment on whether recklessness is sufficient to establish scienter under the federal securities laws.  *See Matrixx Initiatives v. Siracusano*, 131 S. Ct. 1309, 1323-24 (2011); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319 n.3 (2007); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976).  Defendants respectfully submit that, notwithstanding the Second Circuit's holding to the contrary, *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1039 (1978), actual intent is required to maintain a violation of the federal securities laws.

Negligence is not sufficient to establish scienter under the federal securities laws.  *See Hochfelder*, 425 U.S. at 194 n.12.  Therefore, Defendants respectfully submit that the Second Circuit erred in *SEC v. Obus* when it held that liability as a tippee can be established where the tippee "knew or had reason to know" that the information was obtained through the tipper's breach of a duty to his or her principal.  693 F.3d 276, 287-89 (2d Cir. 2012).  Without waiving the foregoing, should the Court determine that actual intent is not required, Defendants request an instruction that Black and Obus, respectively, must have known, or been reckless in not knowing, that Strickland breached his duty of trust and confidence to GE Capital in disclosing the forthcoming Allied acquisition of SunSource to Black on May 24, 2001.

If a person who has a duty of trust and confidence as a result of his position within the company has knowledge of material, nonpublic information, he is prohibited from misappropriating − or stealing – the information and using it for his benefit by trading on it or disclosing it to others so that they can trade securities on the basis of such information.  I will define "material" and "non-public" shortly.

I caution you, however, that the law permits analysts and investment advisers to meet and speak with corporate officers in order to learn about and analyze information useful in making investment decisions.  The receipt and use of material, non-public information does not itself violate the law.  For a defendant to be liable for insider trading, you must also find that the material, non-public information was improperly provided in violation of a duty of trust and confidence to a company that was in possession of the information, and, further, that the defendant knew that the information was disclosed to him in breach of another's duty of trust and confidence.  You must also find that the defendant acted with the intent to deceive, manipulate, or defraud.

In this case, the SEC alleges that Brad Strickland came into possession of material, nonpublic information that Allied was planning to acquire SunSource by virtue of his position at GE Capital, and that Strickland disclosed that information on May 24, 2001 to Peter Black in breach of Strickland's duty of trust and confidence owed to GE Capital and in exchange for a personal benefit.

The SEC alleges that Peter Black and Nelson Obus were "tippees," in that they received from Brad Strickland on May 24, 2001 material, nonpublic information that Allied was planning to acquire SunSource and wrongfully used it for their own benefit when they knew that the information had been disclosed in violation of Strickland's duty to GE Capital.

The defendants deny the SEC's allegations.  They deny that Strickland discussed that Allied was planning to acquire SunSource with Black on May 24, 2001.  They also deny that Black disclosed that Allied was planning to acquire SunSource to Obus.  The defendants also deny that Obus knew that Allied was planning to acquire SunSource, or that Obus's trades in SunSource stock were in any way based on the forthcoming Allied acquisition of SunSource.

**SOURCE:** *United States v. O'Hagan*, 521 U.S. 642 (1997); *Dirks v. SEC*, 463 U.S. 646, 658 (1983) ("Imposing a duty to disclose or abstain solely because a person knowingly receives material nonpublic information from an insider and trades on it could have an inhibiting influence on the role of market analysts, which the SEC itself recognizes as necessary to the preservation of a healthy market.  It is commonplace for analysts to 'ferret out and analyze information' and this is often done by meeting with and questioning corporate officers and others who are insiders.") (internal citation omitted); *Chiarella v. United States*, 445 U.S. 222, 230-33 & n.14 (1980); *SEC v. Obus*, 693 F.3d 276 (2d Cir. 2012); *United States v. Chestman*, 947 F.2d 551, 571 (2d Cir. 1991) (en banc); *SEC v. Monarch Fund*, 608 F.2d 938, 942-43 (2d Cir. 1979) (noting that "[a]ll reasonable investors seek to obtain as much information as they can before purchasing or selling a security," and "[c]arrying the district court holding to its logical conclusion would mean that all investors, brokers, and investment advisers who are attracted to a particular security on the over-the-counter market and seek to obtain further information about it

act at their peril."); *State Teachers Ret. Bd. v. Fluor Corp.*, 592 F. Supp. 592, 594 (S.D.N.Y. 1984) ("Because the incentive to gather market information derives from the ability of traders to use that information profitably, the Court in *Dirks* was loathe to find that the mere possession and use of nonpublic, material information amounted to a 10b-5 violation.  Such restrictions could have restrained the endeavors of market analysts, whose inquiries are 'necessary to the preservation of a healthy market.'") (quoting *Dirks*, 463 U.S. at 658); *United States v. Newman*, 1:12-cr-00121 (RJS), Tr. Jury Charge at 4022:01-4028:19 (S.D.N.Y. Dec. 12, 2012); *United States v. Rajaratnam*, 09-cr-1184 (RJH), Tr. Jury Charge at 5613-14 (S.D.N.Y. Apr. 25, 2011); 4 L. Sand *et al.*, Modern Federal Jury Instructions (Civil), Instr. 82-6.1 (2013).

**INSTRUCTION NO. 15-B: OVERVIEW OF VIOLATIONS CHARGED**[5]

**[Replace The SEC's Proposed Instruction <u>Nos. 14-17</u>
With The Instruction Below]**

*          *          *

Those are my general instructions.  Now I am going to turn to the claim in this case.

The SEC alleges that defendants Strickland, Black, and Obus violated Section 10(b) of the Securities Exchange Act of 1934 and a related federal regulation known as Rule 10b-5.

Section 10(b) provides in pertinent part:  "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any National Securities Exchange . . .  to use or employ, in connection with the purchase or sale of any security registered on a National Securities Exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Securities and Exchange Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10b-5 reads as follows:  "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails or of any facility of any National Securities Exchange to employ any device, scheme, or artifice to defraud . . . or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

The specific device, scheme, or artifice to defraud or act, practice, or course of business that the SEC charges the defendants with is insider trading.

If a person who has a duty of trust and confidence as a result of his position within the company has knowledge of material, nonpublic information, he is prohibited from misappropriating − or stealing − the information and using it for his benefit by trading on it or disclosing it to others so that they can trade securities on the basis of such information.  I will define "material" and "non-public" shortly.

I caution you, however, that the law permits analysts and investment advisers to meet and speak with corporate officers in order to learn about and analyze information useful in making investment decisions.  The receipt and use of material, non-public information does not itself violate the law.  For a defendant to be liable for insider trading, you must also find that the

---

[5] Alternative B is offered only in the event the Court rejects Defendants' arguments (1) that intent is required to establish scienter under the federal securities laws and (2) that *Obus* was incorrectly decided with respect to the standard that applies to a tippee's knowledge that confidential information was initially obtained and transmitted in violation of the tipper's duty to his or her principal.  This instruction is offered without prejudice to Defendants' right to pursue both arguments on appeal.

material, non-public information was improperly provided in violation of a duty of trust and confidence to a company that was in possession of the information, and, further, that the defendant knew or had reason to know that the information was disclosed to him in breach of another's duty of trust and confidence.  You must also find that the defendant acted with the intent to deceive, manipulate, or defraud.

In this case, the SEC alleges that Brad Strickland came into possession of material, nonpublic information that Allied was planning to acquire SunSource by virtue of his position at GE Capital, and that Strickland disclosed that information on May 24, 2001 to Peter Black in breach of Strickland's duty of trust and confidence owed to GE Capital and in exchange for a personal benefit.

The SEC alleges that Peter Black and Nelson Obus were "tippees," in that they received from Brad Strickland on May 24, 2001 material, nonpublic information that Allied was planning to acquire SunSource and wrongfully used it for their own benefit when they knew or had reason to know that the information had been disclosed in violation of Strickland's duty to GE Capital.

The defendants deny the SEC's allegations.  They deny that Strickland discussed that Allied was planning to acquire SunSource with Black on May 24, 2001.  They also deny that Black disclosed that Allied was planning to acquire SunSource to Obus.  The defendants also deny that Obus knew that Allied was planning to acquire SunSource, or that Obus's trades in SunSource stock were in any way based on the forthcoming Allied acquisition of SunSource.

**SOURCE:** *United States v. O'Hagan*, 521 U.S. 642 (1997); *Dirks v. SEC*, 463 U.S. 646, 658 (1983) ("Imposing a duty to disclose or abstain solely because a person knowingly receives material nonpublic information from an insider and trades on it could have an inhibiting influence on the role of market analysts, which the SEC itself recognizes as necessary to the preservation of a healthy market.  It is commonplace for analysts to 'ferret out and analyze information' and this is often done by meeting with and questioning corporate officers and others who are insiders.") (internal citation omitted); *Chiarella v. United States*, 445 U.S. 222, 230-33 & n.14 (1980); *SEC v. Obus*, 693 F.3d 276 (2d Cir. 2012); *United States v. Chestman*, 947 F.2d 551, 571 (2d Cir. 1991) (en banc); *SEC v. Monarch Fund*, 608 F.2d 938, 942-43 (2d Cir. 1979) (noting that "[a]ll reasonable investors seek to obtain as much information as they can before purchasing or selling a security," and "[c]arrying the district court holding to its logical conclusion would mean that all investors, brokers, and investment advisers who are attracted to a particular security on the over-the-counter market and seek to obtain further information about it act at their peril."); *State Teachers Ret. Bd. v. Fluor Corp.*, 592 F. Supp. 592, 594 (S.D.N.Y. 1984) ("Because the incentive to gather market information derives from the ability of traders to use that information profitably, the Court in *Dirks* was loathe to find that the mere possession and use of nonpublic, material information amounted to a 10b-5 violation.  Such restrictions could have restrained the endeavors of market analysts, whose inquiries are 'necessary to the preservation of a healthy market.'") (quoting *Dirks*, 463 U.S. at 658); *United States v. Newman*, 1:12-cr-00121 (RJS), Tr. Jury Charge at 4022:01-4028:19 (S.D.N.Y. Dec. 12, 2012); *United States v. Rajaratnam*, 09-cr-1184 (RJH), Tr. Jury Charge at 5613-14 (S.D.N.Y. Apr. 25, 2011); 4 L. Sand *et al.*, Modern Federal Jury Instructions (Civil), Instr. 82-6.1 (2013).

## INSTRUCTION NO. 18-A:  ELEMENTS OF INSIDER TRADING[6]

### [Replace The SEC's Proposed Instruction
### With The Instruction Below]

\*        \*        \*

I will now instruct you as to what the SEC must prove to establish insider trading in this case with respect to each Defendant.

**Brad Strickland**

To prevail on its insider trading claim against Strickland, the SEC must prove each of the following elements by a preponderance of the evidence.

First, that on May 24, 2001, Strickland knew about Allied's planned acquisition of SunSource.

Second, that Strickland owed a duty of trust and confidence to GE Capital on May 24, 2001 to keep confidential that Allied was planning to acquire SunSource.

Third, that on May 24, 2001, Strickland disclosed to Black that Allied was planning to acquire SunSource.

Fourth, that Strickland intentionally disclosed to Black on May 24, 2001 that Allied was planning to acquire SunSource.  If you find that Strickland acted with anything less than intent, including acting recklessly, negligently, carelessly, or inadvertently, you must find that the SEC failed to prove that Strickland had the requisite state of mind.

---

[6]     The Supreme Court has expressly reserved judgment on whether recklessness is sufficient to establish scienter under the federal securities laws.  *See Matrixx Initiatives v. Siracusano*, 131 S. Ct. 1309, 1323-24 (2011); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 n.3 (2007); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976). Defendants respectfully submit that, notwithstanding the Second Circuit's holding to the contrary, *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1039 (1978), actual intent is required to maintain a violation of the federal securities laws.

Negligence is not sufficient to establish scienter under the federal securities laws.  *See Hochfelder*, 425 U.S. at 194 n.12.  Therefore, Defendants respectfully submit that the Second Circuit erred in *SEC v. Obus* when it held that liability as a tippee can be established where the tippee "knew or had reason to know" that the information was obtained through the tipper's breach of a duty to his or her principal.  693 F.3d 276, 287-89 (2d Cir. 2012).  Without waiving the foregoing, should the Court determine that actual intent is not required, Defendants request an instruction that Black and Obus, respectively, must have known, or been reckless in not knowing, that Strickland breached his duty of trust and confidence to GE Capital in disclosing the forthcoming Allied acquisition of SunSource to Black on May 24, 2001.

Fifth, that Strickland knew that Black was likely to trade on the information Strickland disclosed or disseminate the information further for his own benefit.  If you find that Strickland believed in good faith that the information he disclosed to Black would not be used for trading purposes, you must find that the SEC failed to prove that Strickland had the requisite state of mind.

Sixth, that the forthcoming Allied acquisition of SunSource was material information on May 24, 2001.

Seventh, that the forthcoming Allied acquisition of SunSource was nonpublic information on May 24, 2001.

Eighth, that Strickland knew on May 24, 2001 that the forthcoming Allied acquisition of SunSource was material.

Ninth, that Strickland knew on May 24, 2001 that the forthcoming Allied acquisition of SunSource was nonpublic.

Tenth, that Strickland breached his duty of trust and confidence to GE Capital in his May 24, 2001 discussion with Black.

Eleventh, that Strickland intentionally breached his duty of trust and confidence owed to GE Capital in his May 24, 2001 discussion with Black.  If you find that Strickland acted with anything less than intent, including acting recklessly, negligently, carelessly, or inadvertently, you must find that the SEC failed to prove that Strickland had the requisite state of mind.

Twelfth, that Strickland personally benefitted in some way, directly or indirectly, from the May 24, 2001 disclosure to Black.

Thirteen, that Strickland's conduct on May 24, 2001 was in connection with the purchase or sale of a security.

Fourteenth, that on May 24, 2001, Strickland used or caused to be used a means or instrumentality of interstate commerce in connection with the purchase or sale of a security.

As I will discuss in a moment, when I use the term "intentionally" this means that the SEC must prove that the defendant you are considering acted deliberately.  It is not enough for the SEC to show that a defendant acted mistakenly, negligently, carelessly, or even recklessly.  If you find that the defendant you are considering did not act intentionally, even if you find that his conduct represented an extreme departure from the ordinary standard of care, you must find that the SEC failed to prove that the defendant had the necessary state of mind.

**Peter Black and Nelson Obus**

The SEC's claim against Black and Obus is derivative of the SEC's claim against Strickland.  That means that to prevail on its insider trading claim against Black and Obus, the SEC must first prove that Strickland breached a duty of trust and confidence owed to GE Capital on May 24, 2001 by misappropriating and disclosing material, nonpublic information that Allied was planning to acquire SunSource in exchange for a personal benefit.  In other words, if you find that the SEC failed to meet its burden of proof that Strickland is liable, then you must also find that Black and Obus are not liable.

**Black**

To prevail on its claim against Black, the SEC must also prove each of the following elements by a preponderance of evidence.

<u>First</u>, that Black knew that Strickland owed a duty of trust and confidence to GE Capital on May 24, 2001 to keep confidential the forthcoming acquisition of SunSource.

<u>Second</u>, that Black knew that Strickland breached his duty of trust and confidence to GE Capital by disclosing the forthcoming Allied acquisition of SunSource to Black on May 24, 2001.

<u>Third</u>, that Black knew that Strickland's breach of his duty of trust and confidence to GE Capital on May 24, 2001 was in exchange for a personal benefit to Strickland.

<u>Fourth</u>, that Black disclosed the forthcoming Allied acquisition of SunSource to Nelson Obus on May 24, 2001.

<u>Fifth</u>, that Black intentionally disclosed to Obus on May 24, 2001 the forthcoming Allied acquisition of SunSource.  If you find that Black acted with anything less than intent, including acting recklessly, negligently, carelessly, or inadvertently, you must find that the SEC failed to prove that Black had the requisite state of mind.

<u>Sixth</u>, that Black knew that Obus was likely to trade on the information he learned from Strickland or disseminate the information further for his own benefit.  If you find that Black believed in good faith that the information he disclosed to Obus would not be used for trading purposes, you must find that the SEC failed to prove that Black had the requisite state of mind.

<u>Seventh</u>, that Black knew that the information he received on May 24, 2001 from Strickland was material.

<u>Eighth</u>, that Black knew that the information he received on May 24, 2001 from Strickland was nonpublic.

<u>Ninth</u>, that Black personally benefited in some way, directly or indirectly, from disclosing to Obus on May 24, 2001 the information that he received from Strickland.

Tenth, that Black's conduct on May 24, 2001 was in connection with the purchase or sale of a security.

Eleventh, that on May 24, 2001, Black used or caused to be used a means or instrumentality of interstate commerce in connection with the purchase or sale of a security.

**Obus**

As with Black, to prevail on its insider trading claim against Nelson Obus, the SEC must first prove that Strickland breached his duty of trust and confidence owed to GE Capital by disclosing material, nonpublic information that Allied was planning to acquire SunSource to Black on May 24, 2001 in exchange for a personal benefit.

The SEC must also prove each of the following elements by a preponderance of the evidence:

First, that Obus knew that Strickland owed a duty of trust and confidence to GE Capital on May 24, 2001 to keep confidential the forthcoming Allied acquisition of SunSource.

Second, that Obus knew that Strickland breached his duty of trust and confidence owed to GE Capital by disclosing the forthcoming Allied acquisition of SunSource to Black on May 24, 2001.

Third, that Obus knew that Strickland's breach of his duty of trust and confidence owed to GE Capital on May 24, 2001 was in exchange for a personal benefit to Strickland.

Fourth, that Obus knew that the information he received from Black on May 24, 2001 was material.

Fifth, that Obus knew that the information he received from Black on May 24, 2001 was nonpublic.

Sixth, that Obus traded in SunSource stock on June 8, 2001 on the basis of the information that Allied was planning to acquire SunSource.

Seventh, that Obus intentionally traded on June 8, 2001 on the basis of the forthcoming Allied acquisition of SunSource.  If you find that Obus acted with anything less than intent, including acting recklessly, negligently, carelessly, or inadvertently, you must find that the SEC failed to prove that Obus had the requisite state of mind.

Eighth, that Obus's conduct on June 8, 2001 was in connection with the purchase or sale of a security.

Ninth, that on June 8, 2001, Obus used or caused to be used a means or instrumentality of interstate commerce in connection with the purchase or sale of a security.

**SOURCE:** *United States v. O'Hagan*, 521 U.S. 642 (1997); *Dirks v. SEC*, 463 U.S. 646 (1983); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976); *SEC. v. Obus*, 693 F.3d 276 (2d Cir. 2012); *United States v. Chestman*, 947 F.2d 551 (2d Cir. 1991) (en banc); *United States v. Whitman*, 904 F. Supp. 2d 363, 371 (S.D.N.Y. 2012) (reasoning that "if the only way to know whether the tipper is violating the law is to know whether the tipper is anticipating something in return for the unauthorized disclosure, then the tippee must have knowledge that such self-dealing occurred, for, without such a knowledge requirement, the tippee does not know that there has been an 'improper' disclosure of inside information."); *United States v. Rajaratnam*, 802 F. Supp. 2d 491, 498-99 (S.D.N.Y. 2011) (reasoning that a tippee cannot be a knowing participant in the tipper's breach of duty unless the tippee knows that the tipper was disclosing information for a personal benefit); *State Teachers Ret. Bd. v. Fluor Corp.*, 592 F. Supp. 592, 594 (S.D.N.Y. 1984) ("The second prerequisite to tippee liability—tippee knowledge of tipper breach—necessitates tippee knowledge of *each element*, including the personal benefit, of the tipper's breach.") (emphasis in original).

## <u>INSTRUCTION NO. 18-B:  ELEMENTS OF INSIDER TRADING</u>[7]

### [Replace The SEC's Proposed Instruction
### With The Instruction Below]

\*        \*        \*

I will now instruct you as to what the SEC must prove to establish insider trading in this case with respect to each Defendant.

### <u>Brad Strickland</u>

To prevail on its insider trading claim against Strickland, the SEC must prove each of the following elements by a preponderance of the evidence.

<u>First</u>, that on May 24, 2001, Strickland knew about Allied's planned acquisition of SunSource.

<u>Second</u>, that Strickland owed a duty of trust and confidence to GE Capital on May 24, 2001 to keep confidential that Allied was planning to acquire SunSource.

<u>Third</u>, that on May 24, 2001, Strickland disclosed to Black that Allied was planning to acquire SunSource.

<u>Fourth</u>, that Strickland acted intentionally or recklessly in disclosing to Black on May 24, 2001 that Allied was planning to acquire SunSource, not simply that he acted negligently, carelessly, or inadvertently.

<u>Fifth</u>, that Strickland knew, or was reckless in not knowing, that Black was likely to trade on the information Strickland disclosed or disseminate the information further for his own benefit.  If you find that Strickland believed in good faith that the information he disclosed to Black would not be used for trading purposes, you must find that the SEC failed to prove that Strickland had the requisite state of mind.

<u>Sixth</u>, that the forthcoming Allied acquisition of SunSource was material information on May 24, 2001.

<u>Seventh</u>, that the forthcoming Allied acquisition of SunSource was nonpublic information on May 24, 2001.

---

[7] Alternative B is offered only in the event the Court rejects Defendants' arguments (1) that intent is required to establish scienter under the federal securities laws and (2) that *Obus* was incorrectly decided with respect to the standard that applies to a tippee's knowledge that confidential information was initially obtained and transmitted in violation of the tipper's duty to his or her principal.  This instruction is offered without prejudice to Defendants' right to pursue both arguments on appeal.

Eighth, that Strickland knew on May 24, 2001 that the forthcoming Allied acquisition of SunSource was material, or that he acted with reckless disregard of the nature of the information.

Ninth, that Strickland knew on May 24, 2001 that the forthcoming Allied acquisition of SunSource was nonpublic, or that he acted with reckless disregard of the nature of the information.

Tenth, that Strickland breached his duty of trust and confidence to GE Capital in his May 24, 2001 discussion with Black.

Eleventh, that Strickland knowingly or recklessly breached his duty of trust and confidence owed to GE Capital in his May 24, 2001 discussion with Black, not that he acted negligently, carelessly, or inadvertently.

Twelfth, that Strickland personally benefitted in some way, directly or indirectly, from the May 24, 2001 disclosure to Black.

Thirteen, that Strickland's conduct on May 24, 2001 was in connection with the purchase or sale of a security.

Fourteenth, that on May 24, 2001, Strickland used or caused to be used a means or instrumentality of interstate commerce in connection with the purchase or sale of a security.

As I will discuss in a moment, when I use the terms intentionally or recklessly this means that the SEC must prove that the defendant you are considering acted deliberately, or that his conduct involved an extreme departure from the standard of ordinary care. It is not enough to show that the defendant acted negligently, carelessly, or inadvertently. Negligence means a failure to use the degree of care that a reasonably prudent person would have used under the same circumstances. It is not enough for the SEC to show that a defendant was negligent.

**Peter Black and Nelson Obus**

The SEC's claim against Black and Obus is derivative of the SEC's claim against Strickland. That means that to prevail on its insider trading claim against Black and Obus, the SEC must first prove that Strickland breached a duty of trust and confidence owed to GE Capital on May 24, 2001 by misappropriating and disclosing material, nonpublic information that Allied was planning to acquire SunSource in exchange for a personal benefit. In other words, if you find that the SEC failed to meet its burden of proof that Strickland is liable, then you must also find that Black and Obus are not liable.

**Black**

To prevail on its claim against Black, the SEC must also prove each of the following elements by a preponderance of evidence.

31

First, that Black knew or had reason to know that Strickland owed a duty of trust and confidence to GE Capital on May 24, 2001 to keep confidential the forthcoming acquisition of SunSource.

Second, that Black knew or had reason to know that Strickland breached his duty of trust and confidence to GE Capital by disclosing the forthcoming Allied acquisition of SunSource to Black on May 24, 2001.

Third, that Black knew or had reason to know that Strickland's breach of his duty of trust and confidence to GE Capital on May 24, 2001 was in exchange for a personal benefit to Strickland.

Fourth, that Black disclosed the forthcoming Allied acquisition of SunSource to Nelson Obus on May 24, 2001.

Fifth, that Black acted intentionally or recklessly in disclosing to Obus on May 24, 2001 the forthcoming Allied acquisition of SunSource, not simply that he acted negligently, carelessly, or inadvertently.

Sixth, that Black knew, or was reckless in not knowing, that Obus was likely to trade on the information he learned from Strickland or disseminate the information further for his own benefit.  If you find that Black believed in good faith that the information he disclosed to Obus would not be used for trading purposes, you must find that the SEC failed to prove that Black had the requisite state of mind.

Seventh, that Black knew that the information he received on May 24, 2001 from Strickland was material, or that Black acted with reckless disregard of the nature of the information.

Eighth, that Black knew that the information he received on May 24, 2001 from Strickland was nonpublic, or that Black acted with reckless disregard of the nature of the information.

Ninth, that Black personally benefited in some way, directly or indirectly, from disclosing to Obus on May 24, 2001 the information that he received from Strickland.

Tenth, that Black's conduct on May 24, 2001 was in connection with the purchase or sale of a security.

Eleventh, that on May 24, 2001, Black used or caused to be used a means or instrumentality of interstate commerce in connection with the purchase or sale of a security.

**Obus**

As with Black, to prevail on its insider trading claim against Nelson Obus, the SEC must first prove that Strickland breached his duty of trust and confidence owed to GE Capital by

disclosing material, nonpublic information that Allied was planning to acquire SunSource to Black on May 24, 2001 in exchange for a personal benefit.

The SEC must also prove each of the following elements by a preponderance of the evidence:

First, that Obus knew or had reason to know that Strickland owed a duty of trust and confidence to GE Capital on May 24, 2001 to keep confidential the forthcoming Allied acquisition of SunSource.

Second, that Obus knew or had reason to know that Strickland breached his duty of trust and confidence owed to GE Capital by disclosing the forthcoming Allied acquisition of SunSource to Black on May 24, 2001.

Third, that Obus knew or had reason to know that Strickland's breach of his duty of trust and confidence owed to GE Capital on May 24, 2001 was in exchange for a personal benefit to Strickland.

Fourth, that Obus knew that the information he received from Black on May 24, 2001 was material, or that he acted with reckless disregard of the nature of the information.

Fifth, that Obus knew that the information he received from Black on May 24, 2001 was nonpublic, or that he acted with reckless disregard of the nature of the information.

Sixth, that Obus traded in SunSource stock on June 8, 2001 on the basis of the information that Allied was planning to acquire SunSource.

Seventh, that Obus intentionally or recklessly traded on June 8, 2001 on the basis of the forthcoming Allied acquisition of SunSource.

Eighth, that Obus's conduct on June 8, 2001 was in connection with the purchase or sale of a security.

Ninth, that on June 8, 2001, Obus used or caused to be used a means or instrumentality of interstate commerce in connection with the purchase or sale of a security.

**SOURCE:** *United States v. O'Hagan*, 521 U.S. 642 (1997); *Dirks v. SEC*, 463 U.S. 646 (1983); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976); *SEC. v. Obus*, 693 F.3d 276 (2d Cir. 2012); *United States v. Chestman*, 947 F.2d 551 (2d Cir. 1991) (en banc); *United States v. Whitman*, 904 F. Supp. 2d 363, 371 (S.D.N.Y. 2012) (reasoning that "if the only way to know whether the tipper is violating the law is to know whether the tipper is anticipating something in return for the unauthorized disclosure, then the tippee must have knowledge that such self-dealing occurred, for, without such a knowledge requirement, the tippee does not know that there has been an 'improper' disclosure of inside information."); *United States v. Rajaratnam*, 802 F. Supp. 2d 491, 498-99 (S.D.N.Y. 2011) (reasoning that a tippee cannot be a knowing participant in the tipper's breach of duty unless the tippee knows that the tipper was disclosing information

for a personal benefit); *State Teachers Ret. Bd. v. Fluor Corp.*, 592 F. Supp. 592, 594 (S.D.N.Y. 1984) ("The second prerequisite to tippee liability—tippee knowledge of tipper breach— necessitates tippee knowledge of *each element*, including the personal benefit, of the tipper's breach.") (emphasis in original).

## <u>INSTRUCTION NO. 19-A:  DUTY AND BREACH</u>[8]

**[Replace The SEC's Proposed Instruction
With The Instruction Below]**

\*        \*        \*

As I have instructed, the first element that the SEC must show by a preponderance of the evidence is that Strickland owed a duty of trust and confidence to GE Capital and, as a result of that relationship, was entrusted with material, nonpublic information with the reasonable expectation that he would keep it confidential and would not use it for personal benefit.  A person may have such a duty if the SEC proves by a preponderance of the evidence that he assumed a special confidential relationship with his employer affording him access to material nonpublic information intended to be available only for a corporate purpose and not for his personal benefit.

Thus, it is the confidential nature of the relationship which determines whether a person has the requisite duty, and not merely the title he holds.  In this regard, you are instructed that a mere working relationship is not sufficient to satisfy this element.  For a person to have the necessary duty, the nature of the relationship must be one of trust and confidence.

Whether such relationship of trust and confidence existed between Strickland and GE Capital is ultimately a question of fact for you to determine.  The existence of such a duty depends on the relationship between Strickland and GE Capital.  Strickland's duties may have been expressed explicitly in writing or may be inferred from the nature and circumstances of his relationship with GE Capital.  However, Strickland must have recognized the existence of a relationship of trust and confidence, although the understanding or recognition may be express or implied.

If you find that Strickland had a relationship of trust and confidence with GE Capital, then you must next consider whether the SEC has proven by a preponderance of evidence that Strickland intentionally breached that duty as the SEC alleges – by misappropriating − or stealing − the material, non-public information that Allied was planning to acquire SunSource and disclosing it to Black on May 24, 2001 in exchange for a personal benefit.

**SOURCE:** Adapted from *United States v. Newman*, 1:12-cr-00121 (RJS), Tr. Jury Charge at 4029:02-4030:25 (S.D.N.Y. Dec. 12, 2012); 4 L. Sand *et al*., Modern Federal Jury Instructions (Civil), Instr. 82-6.1 (2013) ("[T]o establish that the defendant was forbidden from trading the securities in question, the plaintiff must show that the defendant was expected to keep

---

[8] The Supreme Court has expressly reserved judgment on whether recklessness is sufficient to establish scienter under the federal securities laws.  *See Matrixx Initiatives v. Siracusano*, 131 S. Ct. 1309, 1323-24 (2011); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319 n.3 (2007); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976).  Defendants respectfully submit that, notwithstanding the Second Circuit's holding to the contrary, *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1039 (1978), actual intent is required to maintain a violation of the federal securities laws.

the material information confidential, or at least that the relationship implied such a duty.  In this regard, you are instructed that a mere working relationship is not sufficient to satisfy this element by imposing insider trading status on the defendant.  In order for the defendant to be an insider, the nature of the relationship must be one of trust and confidence."); 17 C.F.R. § 240.10b5-2; *United States v. Chestman*, 947 F.2d 551 (2d Cir. 1991) (en banc).

### INSTRUCTION NO. 19-B:  DUTY AND BREACH[9]

**[Replace The SEC's Proposed Instruction
With The Instruction Below]**

\*       \*       \*

As I have instructed, the first element that the SEC must show by a preponderance of the evidence is that Strickland owed a duty of trust and confidence to GE Capital and, as a result of that relationship, was entrusted with material, nonpublic information with the reasonable expectation that he would keep it confidential and would not use it for personal benefit.  A person may have such a duty if the SEC proves by a preponderance of the evidence that he assumed a special confidential relationship with his employer affording him access to material nonpublic information intended to be available only for a corporate purpose and not for his personal benefit.

Thus, it is the confidential nature of the relationship which determines whether a person has the requisite duty, and not merely the title he holds.  In this regard, you are instructed that a mere working relationship is not sufficient to satisfy this element.  For a person to have the necessary duty, the nature of the relationship must be one of trust and confidence.

Whether such relationship of trust and confidence existed between Strickland and GE Capital is ultimately a question of fact for you to determine.  The existence of such a duty depends on the relationship between Strickland and GE Capital.  Strickland's duties may have been expressed explicitly in writing or may be inferred from the nature and circumstances of his relationship with GE Capital.  However, Strickland must have recognized the existence of a relationship of trust and confidence, although the understanding or recognition may be express or implied.

If you find that Strickland had a relationship of trust and confidence with GE Capital, then you must next consider whether the SEC has proven by a preponderance of evidence that Strickland intentionally or recklessly breached that duty as the SEC alleges – by misappropriating − or stealing − the material, non-public information that Allied was planning to acquire SunSource and disclosing it to Black on May 24, 2001 in exchange for a personal benefit.

**SOURCE:** Adapted from *United States v. Newman*, 1:12-cr-00121 (RJS), Tr. Jury Charge at 4029:02-4030:25 (S.D.N.Y. Dec. 12, 2012); 4 L. Sand *et al*., Modern Federal Jury Instructions (Civil), Instr. 82-6.1 (2013) ("[T]o establish that the defendant was forbidden from trading the securities in question, the plaintiff must show that the defendant was expected to keep the material information confidential, or at least that the relationship implied such a duty.  In this regard, you are instructed that a mere working relationship is not sufficient to satisfy this element by imposing insider trading status on the defendant.  In order for the defendant to be an insider,

---

[9] Alternative B is offered only in the event the Court rejects Defendants' argument that intent is required to establish scienter under the federal securities laws.  This instruction is offered without prejudice to Defendants' right to pursue that argument on appeal.

the nature of the relationship must be one of trust and confidence."); 17 C.F.R. § 240.10b5-2; *United States v. Chestman*, 947 F.2d 551 (2d Cir. 1991) (en banc).

## INSTRUCTION NO. 20: MATERIAL/NON-PUBLIC

**[Replace The SEC's Proposed Instruction
With The Instruction Below]**

I will now define material and nonpublic.  Please keep in mind that these are two separate criteria.

### Material Information Defined

Material information means information that a reasonable investor would consider significant when deciding whether to buy, sell, or hold stock.  Information is material when there is a substantial likelihood that disclosure of the information would be viewed by a reasonable investor as significantly altering the "total mix" of information made available concerning the company.  Information is not material if it is speculative, vague, not sufficiently concrete, or lacks basic elements of specificity.

The SEC alleges that Strickland disclosed to Black on May 24, 2001 that Allied was planning to acquire SunSource.  Defendants deny that Strickland discussed that Allied was planning to acquire SunSource with Black.  Defendants assert that Strickland asked Black general questions about SunSource's management and told Black that GE Capital was considering doing business with SunSource.  If you find that the evidence supports the defendants' view, you must find that the information conveyed was not material.

**SOURCE:** *Basic. v. Levinson*, 485 U.S. 224, 238 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *SEC v. Monarch Fund*, 608 F.2d 938, 942 (2d Cir. 1979) (information not "material" where it "lacked the basic elements of specificity" concerning proposed financing); *SEC v. Bausch & Lomb, Inc.*, 565 F.2d 8, 15 (2d Cir. 1977) ("Only when the inside information so 'leaked' is essentially 'extraordinary in nature' and reasonably certain to have a substantial effect on the market price of the security does a duty arise to make the information publicly available.") (internal quotations and citations omitted); *SEC v. Rorech*, 720 F. Supp. 2d 367, 411 (S.D.N.Y. 2010) ("Even if Mr. Rorech had shared his opinions with Mr. Negrin as to the likelihood of a holding company issuance or provided Mr. Negrin with general information about the potential deal, such information does not constitute material inside information.").

### Nonpublic Information

Information is "non-public" if it has not been effectively disclosed in a manner sufficient to insure its availability to the investing public.  Information becomes public when disclosed to achieve a broad dissemination to the investing public generally and without favoring any special person or group.

Information is "nonpublic" if it was not available to the public through such sources as press releases, SEC filings, trade publications, analysts' reports, newspapers, magazines, rumors,

word of mouth, or other sources.  In assessing whether information is "nonpublic," the key word is "available."  If information is available in the public media or in SEC filings, it is public.

However, the fact that information has not appeared in a newspaper or other widely available public medium does not alone determine whether the information is "nonpublic." Sometimes a corporation is willing to make information available to securities analysts, prospective investors, or members of the press who ask for it, even though it may never have appeared in any newspaper publication or other publication.  Such information would be public. Accordingly, information is not necessarily nonpublic simply because only a few people have been made aware of it.  Whether information is nonpublic is an issue of fact for you to decide.

**SOURCE:**  *United States v. Contorinis*, 692 F.3d 136, 142 (2d Cir. 2012); *United States v. Cusimano*, 123 F.3d 83, 89 & n.6 (2d Cir. 1997) (upholding instruction that "adequately conveyed to the jury that information that has become public through rumors or other sources should not be considered non-public for purposes of § 10(b) and Rule 10b-5"); *SEC v. Cuban*, Civ. No. 3:08-CV-2050 (N.D. Tex Oct. 16, 2013) (Docket No. 278); *United States v. Newman, et al.*, No. 1:12-cr-00121, Tr. Jury Charge at 4031:3-22 (S.D.N.Y. Dec. 12, 2012); 4 L. Sand *et al*., Modern Federal Jury Instructions (Civil), Instr. 82-6 (2013) (suggesting instruction at p. 82-37).

## <u>INSTRUCTION NO. 21-A:  STATE OF MIND GENERALLY</u>[10]

The third element the SEC must establish by a preponderance of the evidence **[*Insert*: is]** that the defendants acted with the required state of mind.  The standards for this element are different according to each defendant's roles in the alleged violation, as I will explain.

Direct proof of state of mind is **[*Delete*: almost never available and *Replace with*: often not available],** and it is not required to prove a defendant's state of mind.  You cannot peer into a person's head to see what he or she was thinking at some time in the past.  Therefore, whether the particular defendant knew **[*Delete*: , should have known, or was reckless in not knowing and *replace with*: a particular fact]** may be established by circumstantial evidence based upon a person's words, conduct, acts, and all the surrounding circumstances and the reasonable inferences that may be drawn from them.  The defendant's conduct may be considered in light of other evidence in the case if it tends to prove any issue, including state of mind.  You may also consider such evidence as the defendant's knowledge of the marketplace in general or evidence regarding his or her business experience.

---

[10]    The Supreme Court has expressly reserved judgment on whether recklessness is sufficient to establish scienter under the federal securities laws.  *See Matrixx Initiatives v. Siracusano*, 131 S. Ct. 1309, 1323-24 (2011); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319 n.3 (2007); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976).  Defendants respectfully submit that, notwithstanding the Second Circuit's holding to the contrary, *Rolf v. Blyth, Eastman Dillon & Co*., 570 F.2d 38, 47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1039 (1978), actual intent is required to maintain a violation of the federal securities laws.

Negligence is not sufficient to establish scienter under the federal securities laws.  *See Hochfelder*, 425 U.S. at 194 n.12.  Therefore, Defendants respectfully submit that the Second Circuit erred in *SEC v. Obus* when it held that liability as a tippee can be established where the tippee "knew or had reason to know" that the information was obtained through the tipper's breach of a duty to his or her principal.  693 F.3d 276, 287-89 (2d Cir. 2012).  Without waiving the foregoing, should the Court determine that actual intent is not required, Defendants request an instruction that Black and Obus, respectively, must have known, or been reckless in not knowing, that Strickland breached his duty of trust and confidence to GE Capital in disclosing the forthcoming Allied acquisition of SunSource to Black on May 24, 2001.

## INSTRUCTION NO. 21-B:  STATE OF MIND GENERALLY[11]

The third element the SEC must establish by a preponderance of the evidence [*Insert*: **is**] that the defendants acted with the required state of mind.  The standards for this element are different according to each defendant's roles in the alleged violation, as I will explain.

Direct proof of state of mind is [*Delete*: **almost never available and** *Replace with*: **often not available**], and it is not required to prove a defendant's state of mind.  You cannot peer into a person's head to see what he or she was thinking at some time in the past.  Therefore, whether the particular defendant knew, [*Delete*: **should have known, and** *Replace with*:**had reason to know,**] or was reckless in not knowing may be established by circumstantial evidence based upon a person's words, conduct, acts, and all the surrounding circumstances and the reasonable inferences that may be drawn from them.  The defendant's conduct may be considered in light of other evidence in the case if it tends to prove any issue, including state of mind.  You may also consider such evidence as the defendant's knowledge of the marketplace in general or evidence regarding his or her business experience.

---

[11] Alternative B is offered only in the event the Court rejects Defendants' arguments (1) that intent is required to establish scienter under the federal securities laws and (2) that *Obus* was incorrectly decided with respect to the standard that applies to a tippee's knowledge that confidential information was initially obtained and transmitted in violation of the tipper's duty to his or her principal.  This instruction is offered without prejudice to Defendants' right to pursue both arguments on appeal.

## INSTRUCTION NO. 22-A:  STATE OF MIND, TIPPER LIABILITY (STRICKLAND)[12]

**[Replace The SEC's Proposed Instruction
With The Instruction Below]**

\*      \*      \*

The SEC must show by a preponderance of the evidence each of the following with respect to Strickland's state of mind.

First, that on May 24, 2001, Strickland knew about Allied's planned acquisition of SunSource.

Second, that Strickland intentionally disclosed to Black on May 24, 2001 that Allied was planning to acquire SunSource.  If you find that Strickland acted with anything less than intent, including acting recklessly, negligently, carelessly, or inadvertently, you must find that the SEC failed to prove that Strickland had the requisite state of mind.

Third, that Strickland knew that Black was likely to trade on the information Strickland disclosed or disseminate the information further for Black's own benefit.  If you find that Strickland believed in good faith that the information he disclosed to Black would not be used for trading purposes, you must find that the SEC failed to prove that Strickland had the requisite state of mind.

Fourth, that Strickland knew on May 24, 2001 that the forthcoming Allied acquisition of SunSource was material.

Fifth, that Strickland knew on May 24, 2001 that the forthcoming Allied acquisition of SunSource was nonpublic.

Sixth, that Strickland intentionally breached his duty of trust and confidence owed to GE Capital.  If you find that Strickland acted with anything less than intent, including acting recklessly, negligently, carelessly, or inadvertently, you must find that the SEC failed to prove that Strickland had the requisite state of mind.

When I use the term "intentionally" as to Strickland or any other defendant's state of mind, this means that the SEC must prove that the defendant you are considering acted deliberately.  It is not enough for the SEC to show that a defendant acted mistakenly, negligently, carelessly, or even recklessly.  If you find that the defendant you are considering did not act

---

[12] The Supreme Court has expressly reserved judgment on whether recklessness is sufficient to establish scienter under the federal securities laws.  *See Matrixx Initiatives v. Siracusano*, 131 S. Ct. 1309, 1323-24 (2011); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319 n.3 (2007); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976).  Defendants respectfully submit that, notwithstanding the Second Circuit's holding to the contrary, *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1039 (1978), actual intent is required to maintain a violation of the federal securities laws.

intentionally, even if you find that his conduct represented an extreme departure from the ordinary standard of care, you must find that the SEC failed to prove that the defendant had the necessary state of mind.

**SOURCE:**  *United States v. O'Hagan*, 521 U.S. 642, 654-55 (1997) (holding that "deception through nondisclosure is central to [the misappropriation] theory."); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n.12 (1976) (Liability for securities fraud requires proof of scienter, defined as "a mental state embracing intent to deceive, manipulate, or defraud."); *SEC v. Obus*, 693 F.3d 276, 286-88, 291 (2d Cir. 2012); *SEC v. Rorech*, 720 F. Supp. 2d 367, 373 (S.D.N.Y. 2010) ("deceit—or the unauthorized theft of confidential information—is the cornerstone of the misappropriation theory of insider trading liability, on which the SEC's case relies."); *United States v. Whitman*, 904 F. Supp. 2d 363, 367 (S.D.N.Y. 2012) ("Under [misappropriation] approach, liability exists if the tipper breaches a fiduciary-like duty of trust and confidence owed to his employer and its shareholders to keep confidential the material nonpublic information that the tipper discloses to his tippee in return for a personal benefit, knowing that the tippee may trade on the information.").

## INSTRUCTION NO. 22-B:  STATE OF MIND, TIPPER LIABILITY (STRICKLAND) [13]

**[Replace The SEC's Proposed Instruction
With The Instruction Below]**

\*　　　\*　　　\*

The SEC must show by a preponderance of the evidence each of the following with respect to Strickland's state of mind.

<u>First</u>, that on May 24, 2001, Strickland knew about Allied's planned acquisition of SunSource.

<u>Second</u>, that Strickland acted intentionally or recklessly in disclosing to Black on May 24, 2001 that Allied was planning to acquire SunSource, not simply that he acted negligently, carelessly, or inadvertently.

<u>Third</u>, that Strickland knew, or was reckless in not knowing, that Black was likely to trade on the information Strickland disclosed or disseminate the information further for Black's own benefit.  If you find that Strickland believed in good faith that the information he disclosed to Black would not be used for trading purposes, you must find that the SEC failed to prove that Strickland had the requisite state of mind.

<u>Fourth</u>, that Strickland knew on May 24, 2001 that the forthcoming Allied acquisition of SunSource was material, or that he acted with reckless disregard of the nature of the information.

<u>Fifth</u>, that Strickland knew on May 24, 2001 that the forthcoming Allied acquisition of SunSource was nonpublic, or that he acted with reckless disregard of the nature of the information.

<u>Sixth</u>, that Strickland knowingly or recklessly breached his duty of trust and confidence owed to GE Capital, not simply that he acted negligently, carelessly, or inadvertently.

When I use the terms "recklessly," or "with reckless disregard" as to Strickland or any defendant's state of mind, what I mean is that the SEC must prove that the defendant engaged in conduct that involved an extreme departure from the standard of ordinary care.  A person acts recklessly if he or she knows of the danger or it is so obvious that an ordinary person under the circumstances would have been aware of it.

It is not enough to prove that a defendant acted negligently, carelessly, or inadvertently.  As I have instructed, negligence means the failure to use the degree of care that a reasonably prudent person would have used under the same circumstances.  It is not enough for the SEC to show that a defendant was negligent.

---

[13] Alternative B is offered only in the event the Court rejects Defendants' argument that intent is required to establish scienter under the federal securities laws.  This instruction is offered without prejudice to Defendants' right to pursue that argument on appeal.

**SOURCE:** *United States v. O'Hagan*, 521 U.S. 642, 654-55 (1997) (holding that "deception through nondisclosure is central to [the misappropriation] theory."); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n.12 (1976) (Liability for securities fraud requires proof of scienter, defined as "a mental state embracing intent to deceive, manipulate, or defraud."); *SEC v. Obus*, 693 F.3d 276, 286-88, 291 (2d Cir. 2012); *SEC v. Rorech*, 720 F. Supp. 2d 367, 373 (S.D.N.Y. 2010) ("deceit—or the unauthorized theft of confidential information—is the cornerstone of the misappropriation theory of insider trading liability, on which the SEC's case relies."); *United States v. Whitman*, 904 F. Supp. 2d 363, 367 (S.D.N.Y. 2012) ("Under [misappropriation] approach, liability exists if the tipper breaches a fiduciary-like duty of trust and confidence owed to his employer and its shareholders to keep confidential the material nonpublic information that the tipper discloses to his tippee in return for a personal benefit, knowing that the tippee may trade on the information.").

**INSTRUCTION NO. 23-A:**
**STATE OF MIND, TIPPEE LIABILITY (BLACK)** [14]

**[Replace The SEC's Proposed Instruction**
**With The Instruction Below]**

\*       \*       \*

As I have instructed, The SEC's claim against Black and Obus is derivative of the SEC's claim against Strickland.  That means that to prevail on its insider trading claim against Black and Obus, the SEC must first prove that Strickland breached his duty to GE Capital by misappropriating and disclosing material, nonpublic information that Allied was planning to acquire SunSource in exchange for a personal benefit.  In other words, if you find that the SEC has not met its burden of proof that Strickland is liable, then you must also find that Black and Obus are not liable.

As to Peter Black, the SEC must establish by a preponderance of the evidence each of the following with respect to his state of mind.

<u>First</u>, that Black knew that Strickland owed a duty of trust and confidence to GE Capital on May 24, 2001 to keep confidential the forthcoming Allied acquisition of SunSource.

<u>Second</u>, that Black knew that Strickland breached his duty of trust and confidence to GE Capital by disclosing the forthcoming Allied acquisition of SunSource to Black on May 24, 2001.

<u>Third</u>, that Black knew that Strickland's breach of his duty of trust and confidence to GE Capital on May 24, 2001 was in exchange for a personal benefit to Strickland.

---

[14]     The Supreme Court has expressly reserved judgment on whether recklessness is sufficient to establish scienter under the federal securities laws.  *See Matrixx Initiatives v. Siracusano*, 131 S. Ct. 1309, 1323-24 (2011); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319 n.3 (2007); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976). Defendants respectfully submit that, notwithstanding the Second Circuit's holding to the contrary, *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1039 (1978), actual intent is required to maintain a violation of the federal securities laws.

Negligence is not sufficient to establish scienter under the federal securities laws.  *See Hochfelder*, 425 U.S. at 194 n.12.  Therefore, Defendants respectfully submit that the Second Circuit erred in *SEC v. Obus* when it held that liability as a tippee can be established where the tippee "knew or had reason to know" that the information was obtained through the tipper's breach of a duty to his or her principal.  693 F.3d 276, 287-89 (2d Cir. 2012).  Without waiving the foregoing, should the Court determine that actual intent is not required, Defendants request an instruction that Black and Obus, respectively, must have known, or been reckless in not knowing, that Strickland breached his duty of trust and confidence to GE Capital in disclosing the forthcoming Allied acquisition of SunSource to Black on May 24, 2001.

Fourth, that Black intentionally disclosed to Obus on May 24, 2001 the forthcoming Allied acquisition of SunSource.  If you find that Black acted with anything less than intent, including acting recklessly, negligently, carelessly, or inadvertently, you must find that the SEC failed to prove that Black had the requisite state of mind.

Fifth, that Black knew that Obus was likely to trade on the information he learned from Strickland or disseminate the information further for his own benefit.  If you find that Black believed in good faith that the information he disclosed to Obus would not be used for trading purposes, you must find that the SEC failed to prove that Black had the requisite state of mind.

Sixth, that Black knew that the information he received on May 24, 2001 from Strickland and passed along to Obus was material.

Seventh, that Black knew that the information he received on May 24, 2001 from Strickland and passed along to Obus was nonpublic.

**SOURCE:** *United States v. O'Hagan*, 521 U.S. 642, 654-55 (1997) (holding that "deception through nondisclosure is central to [the misappropriation] theory."); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n.12 (1976) (Liability for securities fraud requires proof of scienter, defined as "a mental state embracing intent to deceive, manipulate, or defraud."); *SEC v. Obus*, 693 F.3d 276, 286-88, 292 (2d Cir. 2012); *United States v. Whitman*, 904 F. Supp. 2d 363, 367 (S.D.N.Y. 2012) ("Under [misappropriation] approach, liability exists if the tipper breaches a fiduciary-like duty of trust and confidence owed to his employer and its shareholders to keep confidential the material nonpublic information that the tipper discloses to his tippee in return for a personal benefit, knowing that the tippee may trade on the information."); *SEC v. Rorech*, 720 F. Supp. 2d 367, 373 (S.D.N.Y. 2010) ("deceit—or the unauthorized theft of confidential information—is the cornerstone of the misappropriation theory of insider trading liability, on which the SEC's case relies.").

**INSTRUCTION NO. 23-B:**
**STATE OF MIND, TIPPEE LIABILITY (BLACK)** [15]

**[Replace The SEC's Proposed Instruction**
**With The Instruction Below]**

\*      \*      \*

As I have instructed, The SEC's claim against Black and Obus is derivative of the SEC's claim against Strickland.  That means that to prevail on its insider trading claim against Black and Obus, the SEC must first prove that Strickland breached his duty to GE Capital by misappropriating and disclosing material, nonpublic information that Allied was planning to acquire SunSource in exchange for a personal benefit.  In other words, if you find that the SEC has not met its burden of proof that Strickland is liable, then you must also find that Black and Obus are not liable.

As to Peter Black, the SEC must establish by a preponderance of the evidence each of the following with respect to his state of mind.

<u>First</u>, that Black knew or had reason to know that Strickland owed a duty of trust and confidence to GE Capital on May 24, 2001 to keep confidential the forthcoming Allied acquisition of SunSource.

<u>Second</u>, that Black knew or had reason to know that Strickland breached his duty of trust and confidence to GE Capital by disclosing the forthcoming Allied acquisition of SunSource to Black on May 24, 2001.

<u>Third</u>, that Black knew or had reason to know that Strickland's breach of his duty of trust and confidence to GE Capital on May 24, 2001 was in exchange for a personal benefit to Strickland.

<u>Fourth</u>, that Black acted intentionally or recklessly in disclosing to Obus on May 24, 2001 the forthcoming Allied acquisition of SunSource, not simply that he acted negligently, carelessly, or inadvertently.

<u>Fifth</u>, that Black knew, or was reckless in not knowing, that Obus was likely to trade on the information he learned from Strickland or disseminate the information further for his own benefit.  If you find that Black believed in good faith that the information he disclosed to Obus would not be used for trading purposes, you must find that the SEC failed to prove that Black had the requisite state of mind.

---

[15] Alternative B is offered only in the event the Court rejects Defendants' arguments (1) that intent is required to establish scienter under the federal securities laws and (2) that *Obus* was incorrectly decided with respect to the standard that applies to a tippee's knowledge that confidential information was initially obtained and transmitted in violation of the tipper's duty to his or her principal.  This instruction is offered without prejudice to Defendants' right to pursue both arguments on appeal.

<u>Sixth</u>, that Black knew that the information he received on May 24, 2001 from Strickland and passed along to Obus was material, or that Black acted with reckless disregard of the nature of the information.

<u>Seventh</u>, that Black knew that the information he received on May 24, 2001 from Strickland and passed along to Obus was nonpublic, or that Black acted with reckless disregard of the nature of the information.

**SOURCE:** *United States v. O'Hagan*, 521 U.S. 642, 654-55 (1997) (holding that "deception through nondisclosure is central to [the misappropriation] theory."); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n.12 (1976) (Liability for securities fraud requires proof of scienter, defined as "a mental state embracing intent to deceive, manipulate, or defraud."); *SEC v. Obus*, 693 F.3d 276, 286-88, 292 (2d Cir. 2012); *United States v. Whitman*, 904 F. Supp. 2d 363, 367 (S.D.N.Y. 2012) ("Under [misappropriation] approach, liability exists if the tipper breaches a fiduciary-like duty of trust and confidence owed to his employer and its shareholders to keep confidential the material nonpublic information that the tipper discloses to his tippee in return for a personal benefit, knowing that the tippee may trade on the information."); *SEC v. Rorech*, 720 F. Supp. 2d 367, 373 (S.D.N.Y. 2010) ("deceit—or the unauthorized theft of confidential information—is the cornerstone of the misappropriation theory of insider trading liability, on which the SEC's case relies.").

**INSTRUCTION NO. 24-A:**
**STATE OF MIND, TIPPEE LIABILITY (OBUS)[16]**

**[Replace The SEC's Proposed Instruction**
**With The Instruction Below]**

\*       \*       \*

As I noted a moment ago regarding Black, the SEC's claim against Obus is derivative of the SEC's claim against Strickland.  If you find that the SEC has not met its burden of proof that Strickland is liable, then you must also find that Obus is not liable.

As to Nelson Obus, the SEC must establish by a preponderance of the evidence each of the following with respect to his state of mind.

First, that Obus knew that Strickland owed a duty of trust and confidence to GE Capital on May 24, 2001 to keep confidential the forthcoming Allied acquisition of SunSource.

Second, that Obus knew that Strickland breached his duty of trust and confidence owed to GE Capital by disclosing the forthcoming Allied acquisition of SunSource to Black on May 24, 2001.

Third, that Obus knew that Strickland's breach of his duty of trust and confidence owed to GE Capital was in exchange for a personal benefit to Strickland.

Fourth, that Obus knew that the information he received from Black on May 24, 2001 was material.

---

[16]     The Supreme Court has expressly reserved judgment on whether recklessness is sufficient to establish scienter under the federal securities laws.  *See Matrixx Initiatives v. Siracusano*, 131 S. Ct. 1309, 1323-24 (2011); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 n.3 (2007); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976). Defendants respectfully submit that, notwithstanding the Second Circuit's holding to the contrary, *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1039 (1978), actual intent is required to maintain a violation of the federal securities laws.

Negligence is not sufficient to establish scienter under the federal securities laws.  *See Hochfelder*, 425 U.S. at 194 n.12.  Therefore, Defendants respectfully submit that the Second Circuit erred in *SEC v. Obus* when it held that liability as a tippee can be established where the tippee "knew or had reason to know" that the information was obtained through the tipper's breach of a duty to his or her principal.  693 F.3d 276, 287-89 (2d Cir. 2012).  Without waiving the foregoing, should the Court determine that actual intent is not required, Defendants request an instruction that Black and Obus, respectively, must have known, or been reckless in not knowing, that Strickland breached his duty of trust and confidence to GE Capital in disclosing the forthcoming Allied acquisition of SunSource to Black on May 24, 2001.

Fifth, that Obus knew that the information he received from Black on May 24, 2001 was nonpublic.

Sixth, that Obus intentionally traded on the basis of the forthcoming Allied acquisition of SunSource.  If you find that Obus acted with anything less than intent, including acting recklessly, negligently, carelessly, or inadvertently, you must find that the SEC failed to prove that Obus had the requisite state of mind.

**SOURCE:**  *United States v. O'Hagan*, 521 U.S. 642, 654-55 (1997) (holding that "deception through nondisclosure is central to [the misappropriation] theory."); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n.12 (1976) (Liability for securities fraud requires proof of scienter, defined as "a mental state embracing intent to deceive, manipulate, or defraud."); *SEC v. Obus*, 693 F.3d 276, 286-88 (2d Cir. 2012); *SEC v. Rorech*, 720 F. Supp. 2d 367, 373 (S.D.N.Y. 2010) ("deceit—or the unauthorized theft of confidential information—is the cornerstone of the misappropriation theory of insider trading liability, on which the SEC's case relies.").

<u>INSTRUCTION NO. 24-B:</u>
<u>STATE OF MIND, TIPPEE LIABILITY (OBUS)</u> [17]

**[Replace The SEC's Proposed Instruction**
**With The Instruction Below]**

\*       \*       \*

As I noted a moment ago regarding Black, the SEC's claim against Obus is derivative of the SEC's claim against Strickland. If you find that the SEC has not met its burden of proof that Strickland is liable, then you must also find that Obus is not liable.

As to Nelson Obus, the SEC must establish by a preponderance of the evidence each of the following with respect to his state of mind.

<u>First</u>, that Obus knew or had reason to know that Strickland owed a duty of trust and confidence to GE Capital on May 24, 2001 to keep confidential the forthcoming Allied acquisition of SunSource.

<u>Second</u>, that Obus knew or had reason to know that Strickland breached his duty of trust and confidence owed to GE Capital by disclosing the forthcoming Allied acquisition of SunSource to Black on May 24, 2001.

<u>Third</u>, that Obus knew or had reason to know that Strickland's breach of his duty of trust and confidence owed to GE Capital on May 24, 2001 was in exchange for a personal benefit to Strickland.

<u>Fourth</u>, that Obus knew that the information he received from Black on May 24, 2001 was material, or that he acted with reckless disregard of the nature of the information.

<u>Fifth</u>, that Obus knew that the information he received from Black on May 24, 2001 was nonpublic, or that he acted with reckless disregard of the nature of the information.

<u>Sixth</u>, that Obus intentionally or recklessly traded on the basis of the forthcoming Allied acquisition of SunSource.

**SOURCE:** *United States v. O'Hagan*, 521 U.S. 642, 654-55 (1997) (holding that "deception through nondisclosure is central to [the misappropriation] theory."); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n.12 (1976) (Liability for securities fraud requires proof of scienter, defined as "a mental state embracing intent to deceive, manipulate, or defraud."); *SEC*

---

[17] Alternative B is offered only in the event the Court rejects Defendants' arguments (1) that intent is required to establish scienter under the federal securities laws and (2) that *Obus* was incorrectly decided with respect to the standard that applies to a tippee's knowledge that confidential information was initially obtained and transmitted in violation of the tipper's duty to his or her principal. This instruction is offered without prejudice to Defendants' right to pursue both arguments on appeal.

*v. Obus*, 693 F.3d 276, 286-88 (2d Cir. 2012); *SEC v. Rorech*, 720 F. Supp. 2d 367, 373 (S.D.N.Y. 2010) ("deceit—or the unauthorized theft of confidential information—is the cornerstone of the misappropriation theory of insider trading liability, on which the SEC's case relies.").

### INSTRUCTION NO. 25:  TRADING ON THE BASIS OF MATERIAL, NONPUBLIC INFORMATION

**[Replace The SEC's Proposed Instruction
With The Instruction Below]**

\*     \*     \*

The fifth element the SEC must establish by a preponderance of the evidence is that defendant Obus purchased, or caused the purchase of, shares of SunSource on the basis of material non-public information that Allied was planning to acquire SunSource.  This element is met if Obus was aware of material, nonpublic information that Allied was planning to acquire SunSource, and that information was at least a factor in his trading decision.

**SOURCE:**  *United States v. O'Hagan*, 521 U.S. 642 (1997) (violation of the securities laws occurs when trades are made in a company's securities "on the basis of" inside information an insider has received by reason of his position); *United States v. Whitman*, --- Fed. App'x. ---, No. 13–491–cr., 2014 WL 628143, at \*8 (Feb. 9, 2014) ("Defendants violate the law when they trade 'while in knowing possession of nonpublic information material to those trades.'  Relying on this rule, the district court instructed the jury that inside information must be "at least a factor" in Whitman's trading decision.") (approving charge); *United States v. Rajaratnam*, 719 F.3d 139, 157-60 (2d Cir. 2013) (approving charge that defendant could be convicted if the material non-public information was a factor, "however small," in the defendant's decision to purchase or sell stock, while noting that all that is required in the Second Circuit is "knowing possession."); *United States v. Newman*, 1:12-cr-00121 (RJS), Tr. Jury Charge at 4034:02-23 (S.D.N.Y. Dec. 12, 2012) ("In order to find that the defendant you are considering engaged in insider trading, you must also find that he purchased or sold stock using material, nonpublic information that had been originally disclosed by Ray and/or Choi.  A person uses material, nonpublic information in connection with a stock sale or purchase if that information is a substantial factor in his decision to purchase or sell the stock.").

## INSTRUCTION NO. 26:  "PERSONAL BENEFIT"

**[Replace The SEC's Proposed Instruction
With The Instruction Below]**

\*     \*     \*

The sixth element the SEC must prove by a preponderance of the evidence is that the person or persons who conveyed material nonpublic information, Strickland and Black, benefitted in some way, either directly or indirectly, from the disclosure of the material, non-public information − that is, Allied's planned acquisition of SunSource.  The benefit does not need to be financial or tangible in nature.  It could include, for example, obtaining a useful networking contact, improving a person's reputation or power within the company, obtaining future financial benefits or maintaining or furthering a friendship.  But the SEC must show that Strickland and Black disclosed the material, nonpublic information for some personal reason, rather than a company approved purpose, and obtained some personal benefit, however modest.

**SOURCE:** Adapted from *United States v. Whitman*, No. 1:12-cr-00125 (JSR), Tr. Jury Charge at 2952:05-16 (S.D.N.Y. May 5, 2013); *Dirks v. SEC*, 463 U.S. 646, 662-64 (1983); *SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012).

## <u>INSTRUCTION NO. 27:  TIPPING CHAINS</u>

**[Remove This Proposed Instruction]**

## <u>INSTRUCTION NO. 28-A:  "IN CONNECTION WITH"</u>

**[Replace The SEC's Proposed Instruction
With The Instruction Below]**

\*        \*        \*

In order to establish that a defendant's insider trading violated Section 10(b) of the Exchange Act and Rule 10b-5, the SEC must prove by a preponderance of the evidence that the defendant's conduct was "in connection with the purchase of sale of a security."  This element is satisfied if you find that the defendant's conduct made a significant difference in the decision of someone other than one of the defendants to purchase or sell a security.

**SOURCE:** *Chadbourne & Parke LLP v. Troice et al.,* 134 S. Ct. 1058, 1066 (U.S. Feb. 26, 2014) (interpreting "in connection with" requirement set forth in Securities Litigation Uniform Standards Act of 1998 to require that the alleged misrepresentation or omission be material to a decision by one or more individuals (other than the 'fraudster') to purchase or sell a covered security).

## <u>INSTRUCTION NO. 28-B:  "IN CONNECTION WITH"</u> [18]

In order to establish that the defendants' insider trading violated Section 10(b) of the Exchange Act and Rule 10b-5, the SEC must prove by a preponderance of the evidence that the defendants' conduct was "in connection with the purchase of sale of a security."  This element is satisfied if you find that there was some relation between the alleged insider trading and the sale of securities.  The alleged conduct need only "touch upon" or "coincide with" a securities transaction.

[If stipulated, add:  Since the defendants have stipulated that defendants' conduct was "in connection with the purchase of sale of a security," you should consider this element as proved.]

---

[18] Alternative B is offered only in the event the Court determines that the United States Supreme Court's decision in *Chadbourne & Parke LLP v. Troice et al.,* 134 S. Ct. 1058 (U.S. Feb. 26, 2014), did not modify the standard for demonstrating that a defendant's conduct was "in connection with" the purchase or sale of a security in the context of a 10b-5 claim.  This instruction is offered without prejudice to Defendants' right to pursue this argument on appeal.

## INSTRUCTION NO. 29:  INTERSTATE COMMERCE

Last, in order to establish that the defendant's insider trading violated Section 10(b) of the Exchange Act and Rule 10b-5, the SEC must also prove by a preponderance of the evidence that the defendants knowingly used, or caused to be used, any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange, in furtherance of the insider trading.

This element includes, for example, any use of the mails, the telephone, faxes or other electronic transmission of documents, or wiring or electronically transferring funds, in connection with the purchase or sale of the securities.  All that is required is that those methods be used by anyone in some phase of the purchase or sale.  Examples include telephone calls to or from a stock broker, or the mailing or wiring of the sales proceeds, or the mailing of confirmations or account statements reflecting the purchase or sale.

This element can also be satisfied if the facilities of a national securities exchange were used in connection with the purchase or sale.  The New York Stock Exchange is a national securities exchange.

[If stipulated, add:  Since the defendants have stipulated that defendant Obus made his trades using the means of interstate commerce, you should consider this element as proved.]

## <u>INSTRUCTION NO. 30:  JURY NOT TO CONSIDER RELIEF</u>

**[Remove This Proposed Instruction]**

## INSTRUCTION NO. 31:  CONCLUDING INSTRUCTIONS

### A.    Communications With The Court

You will shortly retire to the jury room to begin your deliberations.  As soon as you get to the jury room, please select one of your number as the foreperson, to serve as your spokesperson if you need to communicate with the Court.

You will be bringing with you into the jury room a copy of my instructions of law, and a verdict form on which to record your verdict.  In addition, we will send into the jury room all of the exhibits that were admitted into evidence.

Any questions or communication with the Court should be made to me in writing, signed by your foreperson, and given to the Marshal, who will be available outside the jury room throughout your deliberations.  After consulting with counsel, I will respond to any question or request you have as promptly as possible, either in writing or by having you return to the courtroom.

### B.    Duty to Deliberate/Requirement For Unanimous Verdict

In order to prevail, the SEC must sustain its burden of proof as I have explained to you with respect to each element of **[*Delete*: each of its claims and *Replace with*: its claim for each defendant].**  If you find that the SEC has succeeded as to **[*Delete*: every claim and *Replace with*: every element of its claim,]** you should return a verdict in its favor on that claim.  If you find that the SEC failed to sustain its burden on any element of a claim, you should return a verdict against it on that claim—that is, enter a verdict of "not liable" on that claim.  Your final decision as to each element against each defendant must be unanimous.

Each of you must decide the case for yourself, after consideration with your fellow jurors of the evidence in the case.  You should not hesitate to change an opinion when convinced that it is erroneous.  However, you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately, without prejudice or favor to either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make you own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  In short, your verdict, whether you find for the SEC or for any of the defendants **[*Insert*: on each element],** must reflect your conscientious conviction as to how the issues should be decided.

### C.      Completion of Verdict Form and Announcing the Verdict

This case will be decided on the basis of the answers that you give to certain questions that appear on a verdict form that you will take into the jury room with you at the conclusion of these instructions.

When all of you have agreed unanimously on any answer, the foreperson of the jury will write the answer in the space provided.

After you have reached your verdict, your foreperson will complete the form that has been given to you.  The foreperson will then sign and date the form, seal it in an envelope, advise the Marshal that you are ready to return to the courtroom, and provide the envelope to the marshal.  [***Replace*: We *with*: I will**] then read the verdict in open court and make sure that it is your unanimous verdict.  The reason we go through this formality is to be absolutely certain that we have your verdict exactly as you have rendered it.

If at any point during your deliberations you are divided as to a particular element [***Delete*: or claim**], do not report how the vote stands.  When you have reached a verdict, do not report what it is until you are asked in open court.

### D.      Concluding Remarks

The most important part of this case, members of the jury, is the part that you as jurors are now about to play as you deliberate on the issues of fact.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views.  Every juror should be heard.